**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

CHRISTOPHER L. CRANE, *et al.*,       )
                                        )
                    Plaintiffs.     )
                                          )  Case No. 3:12-CV-3247-O
         v.                        )
                                          )
JANET NAPOLITANO, *et al.*,         )
                                        )
                  Defendants.   )
                                        )
                                        )
_____)

**DEFENDANTS' MOTION TO DISMISS
AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 4

ARGUMENT ...................................................................................................................... 8

I.       Plaintiffs Lack Article III Standing to Pursue Generalized Policy Objections ................... 8

      A.     Plaintiffs' Challenge to USCIS Providing Employment Authorization
             is a Generalized Grievance and Must Be Dismissed for Lack of Standing ............. 9

      B.     Plaintiffs Cannot Establish Article III Standing to Challenge the Secretary's
             Exercise of Prosecutorial Discretion ...................................................................... 11

           1.   The ICE Plaintiffs' Claim That They Would Violate Their Oath is
                 Insufficient to Establish Standing under Binding Fifth Circuit Law .............. 11

           2.   The State of Mississippi Cannot Establish Standing Through
                 Conclusory and Speculative Allegations that Deferred Action
                 Would Result in Higher Fiscal Costs for the State .......................................... 16

                i. Mississippi Fails to Make Any Allegation that *Deferred
                   Action* Would Result in Higher Fiscal Costs for the State .................... 17

                ii. Mississippi's Purported Injury Cannot Be Redressed By
                  Requiring the Executive Branch to Remove Certain
                  Individual ........................................................................................... 21

II.      Plaintiffs Lack Prudential Standing to Bring this Action Challenging the
      Secretary's Enforcement of the Immigration and Nationality Act ................................... 22

III.     Plaintiffs' Claims Must, Alternatively, Be Dismissed for Improper Venue ................................ 24

CONCLUSION ................................................................................................................... 25

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Allen v. Wright,
    468 U.S. 737 (1984) ........................................................................................... 8, 12

Am. Immigration Lawyers Assoc. v. Reno,
    199 F.3d 1352 (D.C. Cir. 2000) .................................................................... 24

Arizona v. United States,
    132 S. Ct. 2492 (2012) ........................................................................... 7, 21, 22

Baker v. Wade,
    743 F.2d 236 (5th Cir. 1985) ........................................................................ 14

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ...................................................................................... 19

Bennett v. Spear,
    520 U.S. 154 (1997) ...................................................................................... 22

Board of Education v. Allen,
    392 U.S. 236 (1968) ...................................................................................... 13

City of S. Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency,
    625 F.2d 231 (9th Cir. 1980), *cert. denied*, 449 U.S. 1039 ........................ 15, 16

DaimlerChrysler Corp. v. Cuno,
    547 U.S. 332 (2006) ........................................................................................ 8

Donelon v. La. Div. of Admin. Law ex rel. Wise,
    522 F.3d 564 (5th Cir. 2008) ................................................................. passim

Drake v. Obama,
    664 F.3d 774 (9th Cir. 2011) .............................................................. 14, 15, 16

Dutkiewicz v. Napolitano,
    Civil Action No. 12-1447 (M.D.Fl.) ............................................................. 9

ii

Matter of E-R-M & L-R-M,
    25 I. & N. Dec. 520 (BIA 2011) ..................................................................7

Fed'n for Am. Immigration Reform v. Reno,
    93 F.3d 897 (D.C. Cir. 1996), *cert. denied*, 521 U.S. 1119 (1997) .................................. 23

Finch v. Miss. State Med. Ass'n, Inc.,
    585 F.2d 765 (5th Cir.1978) .................................................................. passim

Florida v. Mellon,
    273 U.S. 12 (1927)................................................................... 17, 18

Lance v. Coffman,
    549 U.S. 437 (2007)................................................................... 9, 10

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992)................................................................... passim

Pennsylvania v. Kleppe,
    533 F.2d 668 (D.C. Cir.1976) .................................................................. 18

People of Colo. ex rel. Suthers v. Gonzales,
    558 F. Supp. 2d 1158 (D. Colo. 2007)........................................................... 18

Peterson v. President of the United States,
    Civil Action No. 12-257 (D.N.H.) .............................................................. 9

Reno v. Am.-Arab Anti-Discrimination Comm.,
    525 U.S. 471 (1999)................................................................... 5

Simon v. Eastern Kentucky Welfare Rights Organization,
    426 U.S. 26 (1976)................................................................... 13, 17

Texas v. United States,
    106 F.3d 661 (5th Cir. 1997) ................................................................. 21

United States v. Batchelder,
    442 U.S. 114 (1979)................................................................... 7

Village of Arlington Heights v. Metropolitan Housing Development Corp.,
    429 U.S. 252 (1977)................................................................... 13

iii

Warth v. Seldin,
    422 U.S. 490 (1975)........................................................................................ 13

Wyoming v. United States Dep't of Interior,
    674 F.3d 1220 (10th Cir. 2012) ...................................................... 18, 20

## STATUTES AND REGULATIONS

5 U.S.C. § 7121................................................................................................11

8 C.F.R. § 2.1 ................................................................................................ 23

8 C.F.R. § 274a.12 ........................................................................................ 6

8 U.S.C. § 1103.................................................................................... 4, 22, 23

8 U.S.C. § 1225............................................................................................ passim

8 U.S.C. § 1252............................................................................................ 24

## LEGISLATIVE MATERIALS

H.R. Rep. 111-157(2009)................................................................................6

Pub. L. No. 110-329......................................................................................6

Pub. L. No. 111-83........................................................................................5

Pub. L. No. 112-74........................................................................................ 5

Defendants, by and through undersigned counsel, respectfully move this Court to dismiss Plaintiffs' complaint for lack of standing or, alternatively, for improper venue.

## **INTRODUCTION**

In filing this lawsuit, the Plaintiffs in this action – ten Immigration and Customs Enforcement ("ICE") officers and the State of Mississippi – have asked this Court to validate their policy objections to one specific aspect of how the Department of Homeland Security exercises its prosecutorial discretion and allocates its limited resources.  But bedrock concepts of standing preclude judicial resolution of such policy objections where, as is the case here, Plaintiffs have failed to allege any particularized and personally-experienced injury that can satisfy the requirements of Article III.

On October 10, 2012, Plaintiffs filed an Amended Complaint seeking to enjoin Defendants – the Secretary of Homeland Security ("the Secretary"), the Director of ICE, and the Director of U.S. Citizenship and Immigration Services – from implementing a June 15, 2012 memorandum by the Secretary directing the Department of Homeland Security ("the Department" or "DHS") on how to best utilize its resources in enforcing the nation's immigration laws.  *See* Am. Compl., ¶ 5.  Based on the allegations of the Amended Complaint, Plaintiffs are challenging the Department's recent announcement that it will consider exercising prosecutorial discretion, on a case-by-case basis, in the form of deferred action with respect to certain individuals who were brought to the United States as children and who meet other guidelines demonstrating that they constitute relatively lower priorities for removal.  *See id.* ¶ 2.  In addition, Plaintiffs are seeking to enjoin the Department from

1

providing employment authorization to individuals for whom removal action has been deferred. *See* Am. Compl., ¶¶ 81-91.

These claims are wholly without merit, including (among other reasons) because they seek to challenge decisions committed by law to the discretion of the Secretary. But at this juncture, the merits are not appropriately considered, because Plaintiffs lack standing. This Court should dismiss this action because Article III does not allow judicial review of non-personalized, policy-driven claims such as these.

The generalized nature of the instant dispute is underscored by Plaintiffs' effort to challenge the Department's employment authorization decisions. Such decisions have no connection to the ICE Plaintiffs. The ICE officers have not alleged that they are required to issue employment authorization. Nor could they; as the challenged Departmental policy makes clear, a separate component of the Department, U.S. Citizenship and Immigration Services ("USCIS"), administers the employment authorization process. The ICE Plaintiffs' challenge to USCIS's employment authorization procedures thus plainly amounts to a policy grievance resulting in no individualized injury to them – exactly the type of complaint prohibited by the doctrine of standing. Mississippi can fare no better. Although it grounds its claim in the alleged risk of fiscal injury to the State, Mississippi has not actually alleged that the challenged employment authorizations will result in higher fiscal costs. These claims challenging the employment authorization therefore must be dismissed for lack of standing.

The various Plaintiffs also lack Article III standing to challenge the Secretary's exercise of prosecutorial discretion, which comprises of the remaining causes of action. The

ICE officers claim that the Secretary's exercise of prosecutorial discretion would eventually result in their being forced to violate their oaths to uphold the law.  But, under binding Fifth Circuit law, such an alleged injury is insufficient to establish standing without a showing that the alleged violation of the oath would necessarily result in some additional adverse consequence.  The ICE Plaintiffs have not alleged any such adverse consequence, and they therefore lack standing as a matter of law.  As for Mississippi, Plaintiffs' allegations likewise demonstrate that the State has failed to allege the type of injury necessary for Article III jurisdiction.  The Amended Complaint vaguely and conclusorily alleges that Mississippi will incur additional costs as a result of the challenged memorandum; but Mississippi does not sufficiently allege how the challenged decision to focus agency resources on dangerous aliens as opposed to childhood arrivals would result in higher fiscal costs to the State.  In addition, Mississippi's claim must also be dismissed because the State fails to satisfy Article III's redressability requirement.  Thus, these claims challenging the exercise of prosecutorial discretion must be dismissed.

Even if Plaintiffs could somehow demonstrate constitutional standing (and they cannot), their claims should nevertheless still be dismissed for lack of prudential standing. Plaintiffs challenge the Secretary's authority provided by federal law, including the Immigration and Nationality Act (INA).  But courts have made clear that generic claims of injury based on the alleged negative impact of immigration do not confer prudential standing. Plaintiffs also appear to center their claims on an alleged violation of a statutory provision, 8 U.S.C. § 1225(b)(2)(A).  But courts have found that, as a matter of prudential standing, only

3

*aliens* may bring suit for alleged violations of this statute, and thus Plaintiffs lack prudential standing.

Finally, as an alternative ground, this action should be dismissed for improper venue. Plaintiffs rely on one Plaintiff ICE officer's residence in this district as their basis for venue; none of the other Plaintiffs, including Mississippi and the other ICE officers, would be able establish venue without the inclusion of this Plaintiff.  But that Plaintiff lacks standing for independent reasons beyond the flaws that pervade Plaintiffs' collective attempts to establish standing.  Plaintiffs fail to make any factual allegations describing how the resident ICE officer has been injured.  Venue cannot be manufactured by the inclusion of an improper Plaintiff.  Accordingly, on this independent basis, this action should be dismissed.

## BACKGROUND

Congress has charged the Secretary of Homeland Security with enforcement of the nation's immigration laws.  *See* 8 U.S.C. § 1103.  On June 15, 2012, the Secretary of Homeland Security, Janet Napolitano, issued a memorandum outlining how the Department should exercise its prosecutorial discretion by considering deferred action for certain "low priority cases" involving "people who were brought to this country as children."  *See* June 15, 2012, Memorandum from the Secretary to David V. Aguilar, Acting Commissioner of U.S. Customs and Border Protection ("CBP"), Alejandro Mayorkas, Director of USCIS, and John Morton, Director of ICE ("DHS June 15 Memo"), Attached as Attachment 1 to Plaintiffs' Amended Complaint, at 1.  The Secretary's memorandum lists several guidelines that "should be satisfied before an individual is considered for an exercise of prosecutorial

4

discretion pursuant to this memorandum," such as coming "to the United States under the age of 16," and "continuously resid[ing] in the United for [at] least five years preceding the date" of the memorandum.  *See id*.  It also makes clear that whether to exercise discretion through deferred action is "to be decided on a case by case basis," and "DHS cannot provide any assurance that relief will be granted in all cases."  *See id*. at 2.

"Deferred action" constitutes a longstanding administrative tool for managing the removal process.  *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) ("At each stage [of the deportation process] the Executive has discretion to abandon the endeavor, and at the time [Immigration Reform and Immigrant Responsibility Act] was enacted the [Immigration and Naturalization Service] had been engaging in a regular practice (which had come to be known as 'deferred action') of exercising that discretion for humanitarian reasons or simply for its own convenience").  Recognizing that the possible candidates for removal far exceed the Department's removal capacity in any individual year, the Department – just like any other law enforcement agency – necessarily must prioritize its enforcement efforts.  Deferred action allows the Department to "defer" enforcement against low priority candidates for removal so as to focus the agency's scarce resources on high priority candidates for removal, such as criminal aliens and aliens who pose threats to public safety or national security.[1]   Deferred action *does not* offer any change in immigration status

---

[1] Indeed, Congress has directed DHS to "prioritize the identification and removal of aliens convicted of a crime by the severity of that crime."  Department of Homeland Security Appropriations Act, 2012, Pub. L. No. 112-74, Div. D, Tit. ii, 125 stat. 950 (2011); *accord*, *e.g.*, Department of Homeland Security Appropriations Act, 2010, Pub. L. No. 111-83, Tit. II, 123 Stat. 2142 (2009) (same); Department of Homeland Security Appropriations Act,

to the alien whose removal is deferred.  Indeed, the Secretary's memorandum makes clear that it "confers no substantive right, immigration status or pathway to citizenship."  DHS June 15 Memo at 3.  Thus, the memorandum is simply a formal statement of the Department's effort to avoid allocating scarce resources in inefficient ways.

The Secretary's memorandum also notes that for individuals whose removal is deferred, USCIS shall accept applications to determine whether these individuals qualify for employment authorization during this period of deferred action.  *See id.*  The ability to seek employment authorization in cases of deferred action is not new, but is provided for by a pre-existing regulation.  *See* 8 C.F.R. § 274a.12(c)(14).  The validity of that regulation has not been challenged by Plaintiffs.

Plaintiffs, originally ten ICE officers, brought suit on August 23, 2012, (1) challenging the Secretary's memorandum outlining how the Department should exercise prosecutorial discretion in the form of consideration of deferred action for certain low priority cases; and (2) seeking to enjoin USCIS from authorizing employment for aliens whose removal has been deferred.  *See* Compl.  Plaintiffs amended their complaint on October 10, 2012, to add Mississippi as a plaintiff.  *See* Am. Compl.

The ten ICE officers attempt to satisfy standing by claiming that they are being forced to violate their oath of office.  Specifically, the officers allege that they "have each sworn an

---

2009, Pub. L. No. 110-329, Div. D, Tit. II, 122 Stat. 3659 (2008) (same); *see also* H.R. Rep. 111-157, at 6 (2009) ("[R]ather than simply rounding up as many illegal immigrants as possible, which is sometimes achieved by targeting the easiest and least threatening among the undocumented population, DHS must ensure that the government's huge investments in immigration enforcement are producing the maximum return in actually making our country safer.").

oath to support and defend the Constitution of the United States and the laws of the United

States," and they claim "that if they follow the [DHS June 15 Memo]," they will be injured

because "they will be violating their oath of office, as well as violating several laws of the

United States."  *See id*. ¶¶ 47, 48.  They allege that 8 U.S.C. § 1225(b)(2)(A) requires them to

detain for removal proceedings aliens who are not clearly lawfully present in the United

States, s*ee id*. ¶ 40,[2] and that they have a reasonable fear that they would be disciplined if

they issue a Notice to Appear ("NTA") commencing a removal proceeding to an individual

eligible for deferred action, *see id*. ¶ 49.  Thus, they claim that the Secretary's memorandum

injures them because if they abide by it they will violate their oaths of office.

      These asserted harms obviously do not implicate the State of Mississippi, which

instead claims that deferring action for childhood arrivals "will impose a net fiscal cost on

the State."  *See id*. ¶ 66.  None of the Plaintiffs, including Mississippi, make *any* allegation as

to how the provision of employment authorization by USCIS (which does not directly

involve the Plaintiff ICE Agents) results in injury to Plaintiffs.

      In their Amended Complaint, Plaintiffs allege that Defendants' actions violate various

federal statutes, but only identify one specific statutory provision, 8 U.S.C. § 1225(b).  *See*

Am. Compl., First Cause of Action, ¶¶ 67-73.  They also allege that Defendants have

---

[2] Although it is not the subject matter of this motion, Plaintiffs' statutory interpretation is
incorrect; 8 U.S.C. § 1225 does not restrict the exercise of prosecutorial discretion.  *See
Matter of E-R-M & L-R-M*, 25 I. & N. Dec. 520 (BIA 2011) (holding that the word "shall" in
8 U.S.C. § 1225(b)(1)(A)(i), is equivalent to use of the word "may" because, otherwise, it
would impede a prosecutor's discretion) (citing *United States v. Batchelder*, 442 U.S. 114,
118 (1979)).  Plaintiffs – whether through a citation to their oath or otherwise – cannot
challenge the governing interpretation of that statute or the Department's recognized
discretion in removal decisions.  *See Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012).

violated federal law by conferring a non-statutory benefit in the form of deferred action, *see id*., Second Cause of Action, ¶¶ 74-80, and employment authorization, *see id*, Third Cause of Action, ¶¶ 81-91, although Plaintiffs do not identify which federal laws are allegedly being violated and do not challenge the validity of the pre-existing regulations providing for employment authorization in certain cases of deferred action.  Plaintiffs also make two constitutional allegations, claiming Defendants have violated Article I, section 1, which provides that all legislative power shall be vested in Congress, *see id*, Fourth Cause of Action, ¶¶ 92-104, and Article II, section 3, which provides that the President "shall take Care that the Laws be faithfully executed," *see id*, Fifth Cause of Action, ¶¶ 105-109.  Lastly, Plaintiffs claim that Defendants violated the Administrative Procedure Act by failing to engage in rulemaking in implementing a policy that Plaintiffs allege violates statutory authority.  *See id*, Sixth Cause of Action, ¶¶ 110-116.

## ARGUMENT

### I.      Plaintiffs Lack Article III Standing to Pursue Generalized Policy Objections.

Federal courts sit to decide cases and controversies, not to resolve disagreements about policy or politics.  Indeed, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (citation and internal quotation omitted).  To establish standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Allen v. Wright*, 468 U.S. 737, 751 (1984).

Plaintiffs' policy dispute regarding the Executive Branch's enforcement of the immigration laws does not satisfy one of the most basic prerequisite of a case or controversy under Article III: a claimant with standing to sue.

The Supreme Court has consistently admonished that "'a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in [the] proper application of the Constitution and laws, and seeking relief that no more directly [or] tangibly benefits him than it does the public at large—does not state an Article III case or controversy.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Two other cases have been brought to challenge the Secretary's recent memorandum; both have been dismissed as generalized grievances.  *See Peterson v. President of the United States*, Civil Action No. 12-257 (D.N.H.); *Dutkiewicz v. Napolitano*, Civil Action No. 12-1447 (M.D.Fl.).  Although Plaintiffs attempt to paint themselves as differentially situated from that of any ordinary citizen with a generalized grievance, they are not – their policy complaints are the very sort of generalized grievances that courts have refused to permit.

A.      **Plaintiffs' Challenge to USCIS Providing Employment Authorization is a Generalized Grievance and Must Be Dismissed for Lack of Standing.**

As an initial matter, Plaintiffs seek to prevent the Department from authorizing the employment of individuals for whom action has been deferred.  *See* Am. Compl., Third Cause of Action, ¶¶ 81-91.  But this claim should be dismissed as a generalized grievance for which this Court lacks jurisdiction.  Plaintiffs lack any connection to the employment authorization process, and their claims are therefore no different than those of any other

citizen.  Thus, Plaintiffs' challenge to the employment authorization process thus must be dismissed for lack of standing.  *See, e.g.*, *Lance*, 549 U.S. at 439.

The ICE Plaintiffs have claimed no injury that results from USCIS providing employment authorization to those with deferred action.  In fact, ICE has no involvement with the provision of employment authorization.  *See* DHS June 15 Memo at 3 ("For individuals who are granted deferred action by either ICE or USCIS, *USCIS* shall accept applications to determine whether these individuals qualify for employment authorization during this period of deferred action.") (emphasis added).  The ICE officers' claim amounts to nothing more than a disagreement with Department policy for which this Court does not have jurisdiction.

Similarly, Mississippi has failed to allege any injury that results from USCIS providing employment authorization.  Rather, if anything, the employment authorizations for those with deferred action would likely provide a net fiscal benefit to the Mississippi based on a higher revenue source.  As Mississippi acknowledges in a 2006 State Audit it attaches to the Amended Complaint, it receives a fiscal benefit from taxes paid each year by undocumented aliens.  *See* The Impact Illegal Immigration on Mississippi: Costs and Population Trends, Office of the State Auditor, 2006 ("State Audit"), Attached as Attachment 2 to Plaintiffs' Amended Complaint, at iv.  But Mississippi notes in the Audit that "[a]necdotally," the State believes that many undocumented aliens "work on a cash-only basis" and, therefore, "less money is paid into the State's general fund."  *See id*. at 13.  But if (as Mississippi concedes) the challenged memorandum will result in an increase in

10

employment authorizations, then the program will decrease the incidence of cash-only work and thereby present a net fiscal benefit to the State.

Accordingly, this Court must dismiss Plaintiffs' third cause of action as a generalized grievance for which Plaintiffs lack Article III standing.

### B. Plaintiffs Cannot Establish Article III Standing to Challenge the Secretary's Exercise of Prosecutorial Discretion.

#### 1. The ICE Plaintiffs' Claim That They Would Violate Their Oath is Insufficient to Establish Standing under Binding Fifth Circuit Law.

To avoid dismissal for the remaining causes of action on grounds that they have raised a generalized grievance, the ICE Plaintiffs contrive to establish standing in a manner explicitly rejected by the Fifth Circuit. Plaintiffs claim that implementing provisions of the Secretary's memorandum exercising prosecutorial discretion would injure them by forcing them to violate their oath to support and defend the laws of the United States. *See* Am. Compl. ¶¶ 47, 48, 58, 71.[3] The Fifth Circuit has categorically held that purportedly being required to violate an oath is insufficient to establish standing without a showing that there would be some *separate and concrete* adverse consequence that flows from violating the oath. *See Finch v. Miss. State Med. Ass'n, Inc.,* 585 F.2d 765, 773-75 (5th Cir.1978) (holding that Governor Finch did not have standing to challenge a state statute that he claimed violated his oath to defend the U.S. Constitution); *see also Donelon v. La. Div. of Admin.*

---

[3] To the extent Plaintiffs claim that they are challenging a purported proposed suspension or a purported violation of a collective bargaining requirement to provide proper notice, *see* Am. Compl. ¶¶ 50, 59, neither of those contentions is properly before the Court. Plaintiffs would first have to submit such grievances through the proper administrative process as established by the collective bargaining agreement. *See, e.g.*, 5 U.S.C. § 7121 (establishing grievance procedures for federal collective bargaining agreements).

*Law ex rel. Wise*, 522 F.3d 564 (5th Cir. 2008) (holding that the Louisiana Commissioner of Insurance had no standing to challenge a state statute that he claimed infringed on his authority).  Plaintiffs have not alleged, nor could they, that they would face any adverse consequence in complying with the Secretary's memorandum for how to exercise prosecutorial discretion and, accordingly, lack standing to allege that they are being required to violate their oath.

The Fifth Circuit's decision in *Finch* is directly on point: to establish standing, a plaintiff would have to demonstrate that he would face an adverse consequence as a result of violating his oath – separate and apart from the alleged oath violation itself.  *See Finch*, 585 F.2d at 774.  There, the Governor of Mississippi claimed he was being forced to choose between violating "his oath to uphold the laws of Mississippi if he ignore[d] a statute he believed to be unconstitutional or violating his "oath to uphold the Constitutions of Mississippi and the United States if he obey[ed]" the statute.  *See Id.* at 773.  Just like the ICE Plaintiffs do in this case, Governor Finch attempted to satisfy standing by claiming that he would suffer Article-III injury if forced to take action that he believed would constitute a violation of his oath of office.[4]  The Fifth Circuit held that such an assertion was insufficient to establish standing.  *See id*. at 774 ("The mental disposition of the Governor is all that gives him cause to complain; were he to change his mind tomorrow and decide, rightly or wrongly,

---

[4] The Governor also believed that if "he fail[ed] to act" to uphold the laws of Mississippi, "he may be sued for damages."  *See id*.  But the Fifth Circuit found that the Governor's alleged "general threat of suit" for either violating his oath to uphold the laws of Mississippi or his oath to uphold the Constitutions of the United States and Mississippi "does no suffice to give the Governor an adequate interest."  *See id*.

that the state statute is valid, he would no longer have any interest in the case."). The

Governor was unable to show that he faced any distinct adverse consequence as a result of

purportedly violating his oath: he was "in no danger of expulsion from office as a result of

any action that he alone believes may have violated his oath." *See id*. Accordingly, the Fifth

Circuit held that "Governor Finch has no standing by virtue of his oath of office because,

without more, this alone is not a sufficient personal stake." *See id*.[5]

     Recently, the Fifth Circuit reaffirmed its holding in *Finch* in concluding that the State

of Louisiana's Commissioner of Insurance did not have standing to challenge a state statute

that he claimed violated "the Commerce and Supremacy Clauses" of the U.S. Constitution by

purportedly being inconsistent with federal law. *See Donelon*, 522 F.3d at 564. The Fifth

Circuit held that Donelon, the Insurance Commissioner, had no "'personal stake' in this

litigation." *Id*. at 568. Rather, "[a]s in *Finch*, [the Commissioner] is merely suing to ensure

---

[5] In reaching this conclusion, the Fifth Circuit distinguished a passage in the Supreme Court's decision in *Board of Education v. Allen*, 392 U.S. 236, 241 n.5 (1968), suggesting "that members of a school board had, by virtue of a similar oath [to one undertaken by Governor Finch], standing to challenge a state statute they believed violative of the federal constitution." Instead, the Fifth Circuit made clear that the older *Allen* decision must be interpreted in light of "the Supreme Court's more recent pronouncements on the subject of standing," leading to the conclusion that a mere alleged oath-of-office is insufficient as a matter of law to establish standing in the Fifth Circuit. *See Finch*, 585 F.2d at 773 (citing *Village of Arlington Heights v. Metropolitan Housing Development Corp*., 429 U.S. 252 (1977); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976); *Warth v. Seldin*, 422 U.S. 490 (1975)); *see also Donelon*, 522 F.3d at 567 n. 5 ("*Finch* explained that later standing decisions limited *Allen* and that *Allen* was factually distinct. *Finch*, 585 F.2d 773-74; *see also* 13A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, FEDERAL PRACTICE & PROCEDURE § 3531.11 (stating that federal circuit courts have recognized that Allen's holding has been undermined by the Court's more recent standing decisions)").

Louisiana law conforms to his *opinion* of what federal law requires." *Id*. (emphasis in original). The Fifth Circuit concluded that the dispute was purely "intramural," as the plaintiff did not claim that he would face any distinct adverse consequence in complying with a state statute that purportedly violated federal law. *Id*. (noting there was no claim that the Commissioner would be "expelled from office or lose public funding if he complie[d] with Louisiana law"). *Donelon* thus confirmed what *Finch* made clear: if an alleged violation of a statutory or constitutional duty is the only consequence that follows from *upholding* a challenged law, a plaintiff cannot establish standing by suggesting that a *refusal* to uphold the law will result in injury. In such a situation, the plaintiff has a choice available to avoid a cognizable injury – upholding the law – and thus cannot seek redress in Court because of a preference to avoid the non-injurious choice. [6]

In a case analogous to this one, the Ninth Circuit held just last year that a federal government employee could not establish standing to challenge the actions of his superiors by claiming that his compliance would violate his oath to uphold the Constitution. *See Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011). In *Drake*, plaintiff Freese attempted to represent a class of active duty military personnel who alleged that following the orders of

---

[6] In one other case, 23 years before *Donelon*, the Fifth Circuit stated in dicta that a district attorney might have had a sufficient interest in his oath to enforce state law to intervene as a defendant to defend a state statute. *See Baker v. Wade*, 743 F.2d 236, 241 n. 21 (5th Cir. 1985). The Court, however, ultimately denied the district attorney's motion to intervene, concluding that the district attorney's interests were already adequately represented. *See id*. at 241-44. And, the Court in *Baker* did not even address the adverse consequence requirement established in *Finch*, which was later reaffirmed by *Donelon*, or whether an alleged oath-of-office injury satisfies a *plaintiff's* burden to demonstrate standing.

14

President Obama would violate their "oath" to defend the Constitution because they alleged President Obama is not a natural born citizen of the United States and accordingly does not meet the "constitutional qualifications of the Commander-in-Chief." *See id.* at 780. Further, "Freese argue[d] that, were he to refuse to follow President Obama's orders, despite [Freese's contention that the President is ineligible] for the presidency, Freese would face disciplinary action by the military." *See id.* Relying on a previous Ninth Circuit holding that a plaintiff would have to face an adverse consequence in violating an oath to establish standing, the Ninth Circuit found that Freese lacked standing. *See Drake*, 664 F.3d at 780 (citing *City of S. Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency*, 625 F.2d 231, 234-239 (9th Cir. 1980), *cert. denied*, 449 U.S. 1039[7]). Freese "failed to assert any concrete injury" because the "notion that he will be disciplined by the military for obeying President Obama's orders is entirely speculative." *See Drake*, 664 F.3d at 780. Although Freese "might be disciplined for *disobeying* those orders," he has, similar to the Plaintiffs in this case, "'an available course of action which subjects [him] to no concrete adverse consequences' — he can obey the orders of the Commander-in-Chief." *See id.* (emphasis in original) (quoting *S. Lake Tahoe*, 625 F.2d at 237).

The Ninth Circuit found in *Drake* that "an oath taker's claims are, under contemporary jurisprudence, 'abstract constitutional grievances' insufficient to meet the requirements of Article III." *Drake*, 664 F.3d at 780; *see also S. Lake Tahoe*, 625 F.2d at 238

---

[7] In dissenting from the certiorari denial, Justice White recognized both disagreement among the Circuits on how to apply *Allen* and that *Finch* represented the Fifth Circuit's application of *Allen. See* 449 U.S. 1039.

("To confer standing on public officials because they wish not to enforce a statute due to private constitutional predilections, or because their decision not to enforce the statute may result in criminal liability, would convert all officials charged with executing statutes into potential litigants, or attorneys general, as to laws within their charge.").

Just as the plaintiffs in *Finch, Donelon,* and *Drake* could not establish standing based on an allegation that they would violate an oath, the ICE Plaintiffs in this case cannot establish standing.[8]  The ICE Plaintiffs do not face any adverse consequence in the exercise of prosecutorial discretion.  Accordingly, the ICE Plaintiffs' challenge to this exercise of prosecutorial discretion must be dismissed.

### 2. The State of Mississippi Cannot Establish Standing Through Conclusory and Speculative Allegations that Deferred Action Would Result in Higher Fiscal Costs for the State.

Unable to establish standing through the ICE officers who originally comprised the Plaintiffs in this case, the Plaintiffs amended their complaint to add the State of Mississippi (by and through the Governor of Mississippi).  But the State of Mississippi fares no better: it has similarly invoked this Court's jurisdiction purely based on a policy grievance.  This Court should dismiss Mississippi's claims, immersed in conjecture, for lack of standing.

Each plaintiff has the burden of establishing standing.  *See Lujan*, 504 U.S. at 561 ("The party invoking federal jurisdiction bears the burden of establishing [the elements of

---

[8] Those Plaintiffs who fail to allege any particularized facts have an even less claim to standing.  This includes the only Plaintiff who resides in this district who provides the basis for venue in this action.  *See*, *infra*, at 24-25 ("Plaintiffs' Claims Must, Alternatively, Be Dismissed for Improper Venue.").

standing].").  As with any other party, the harm to Mississippi's interests must be "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'"  *Id.* at 560-61 (citations omitted).  "There must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the *challenged action* of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'"  *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 41-42 (1976)) (emphasis added).  And "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id.* at 561 (quoting *Simon,* 426 U.S. at 38).  "[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish."  *Id.* at 562 (quoting *Allen,* 468 U.S. at 758).

> ### i.  Mississippi Fails to Make Any Allegation that *Deferred Action* Would Result in Higher Fiscal Costs for the State.

Mississippi has not asserted a sufficiently concrete injury resulting from the challenged prosecutorial discretion guidance at issue here.  Mississippi attempts to establish standing by alleging that the Secretary's decision to focus the Department's limited resources on high priority cases "will impose a net fiscal cost on the State."  Am. Compl. ¶ 66.  Although Mississippi alleges in a conclusory manner that the cost is "foreseeable, estimable, and significant," *id.,* the purported cost is in fact "purely speculative, and, at most, only remote and indirect."  *See Florida v. Mellon,* 273 U.S. 12, 17 (1927) (rejecting standing notwithstanding Florida's allegation that challenged federal law would induce citizens to

17

remove property from the State and thereby diminishing the State's revenues).  Accordingly, Mississippi has not alleged a sufficiently concrete injury to establish standing.  *See People of Colo. ex rel. Suthers v. Gonzales*, 558 F. Supp. 2d 1158, 1165 (D. Colo. 2007) (holding that Colorado Attorney General lacked standing to bring speculative claim that purported failure to enforce immigration laws would result in higher threat of terrorist attack).

Mississippi's alleged injury is similar to one recently rejected by the Tenth Circuit in *Wyoming v. United States Dep't of Interior*, 674 F.3d 1220, 1231-35 (10th Cir. 2012). Similar to Mississippi, the State of Wyoming alleged that it would suffer economic harm because of a new National Park Service rule.  *See id*.  The Tenth Circuit held that Wyoming "failed to demonstrate a concrete injury in fact from any alleged economic loss."  *Id*. at 1235. Finding that it was entirely speculative that any economic injury would result from the rule, the Court concluded that Wyoming "presented only a generalized grievance" and warned that "holding otherwise might spark a waive of unwarranted litigation against the federal government."  *See id*. at 1234 ("Indeed, 'the unavoidable economic repercussions of virtually all federal policies, and the nature of the federal union as embodying a division of national and state powers, suggest to us that impairment of state tax revenues should not, in general, be recognized as sufficient injury-in-fact to support state standing.') (quoting *Pennsylvania v. Kleppe,* 533 F.2d 668, 672 (D.C.Cir.1976)).

Mississippi offers no basis for claiming that the challenged policy – which increased focus on criminal and dangerous aliens – will result in greater costs for the State of Mississippi.  First, there is no indication that deferring action for childhood arrivals will

18

result in fewer total removals.  In fact, in the last three years, ICE has generally been

consistent in the number of individuals it has removed each year: 389,834 in 2009; 392,862

in 2010; and 396,906 in 2011.  *See* ICE Removal Statistics – Charts and Graphs, available at

http://www.ice.gov/removal-statistics/ (last visited November 13, 2012).  Deferring action

for certain childhood arrivals means nothing more than that the Department will shift its

limited resources to focus on its highest removal priorities, which include, per Congress's

directive, a focus on criminal aliens and other aliens who threaten public safety (*see supra*

note 1).  Mississippi's vague and conclusory allegations as to the cost of immigration

generally do not in any way demonstrate that the shift in removal resources contemplated by

the Secretary's memorandum would, by focusing on dangerous aliens and deprioritizing the

removal of certain childhood arrivals, increase any burden on Mississippi.  Mississippi's

failure to offer such allegations is dispositive with respect to its claim of injury.  *See Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a complaint that is nothing

"more than labels and conclusions . . . will not do.").

     Second, Mississippi's allegation of injury also fails because it is based on the flawed

premise that individuals for whom action is deferred would otherwise have been deported.

One of the guidelines that should be satisfied in considering the exercise of prosecutorial

discretion pursuant to the Secretary's memorandum is that the individual "has continuously

resided in the United States for [at] least five years." *See* DHS June 15 Memo at 1.  Prior to

the Secretary's memorandum, the Department already was focusing its removal resources on

higher priority cases, rather than on individuals for whom action may be deferred.  Indeed,

19

long before the issuance of the Secretary's memorandum, ICE had announced its efforts to

exercise prosecutorial discretion to optimize its finite immigration enforcement resources to

"promote the agency's highest enforcement priorities, namely national security, public safety,

and border security."  *See* Memorandum from ICE Director John Morton, Civil Immigration

Enforcement: Priorities for the Apprehension, Detention, and Removal of Aliens 1 (June 30,

2010), available at http://www.ice.gov/doclib/news/releases/2010/civil-enforcement-

priorities.pdf (last visited Nov. 13, 2012).  Mississippi's failure to clearly allege how the

Secretary's memorandum will affect ICE removal operations within the State is dispositive.

        Finally, Mississippi's reliance on a 2006 State Audit that it attaches to the Amended

Complaint about the general cost of illegal immigration is irrelevant to its current challenge

to the Secretary's memorandum and whether deferred action results in higher fiscal costs.

*See Wyoming*,, 674 F.3d at 1232 ("Citation to a study conducted over 15 years ago *does not*

*establish Petitioners are suffering a loss resulting from the 2009 rules*.") (emphasis added).

In any event, even a cursory review of the State Audit demonstrates Mississippi's

overstatement in the Audit and suggests that it is not even clear whether Mississippi incurs

any fiscal costs from illegal immigration.[9]

        Not only is it entirely based on conjecture that Mississippi incurs *any* costs as a result

of illegal immigration, but Mississippi has failed to show that any greater costs would result

_____

[9] For example, Mississippi estimates a cost of approximately $35 million spent on healthcare
s*ee id*. at 8, but Mississippi based its calculations on the costs to hospitals and the federal
government, which helps reimburse those hospitals; Mississippi acknowledges that the
hospitals only "receive some amount of funding from the State." *See* State Audit.  Obviously,
Mississippi cannot use costs reimbursed by the federal government as a basis for claiming
injury in a lawsuit *against the federal government*.

from the federal government's decision to devote its resources on higher priority cases – a failure that is wholly dispositive on the question of Mississippi's standing in this case.

### ii. Mississippi's Purported Injury Cannot Be Redressed By Requiring the Executive Branch to Remove Certain Individuals.

Likewise, there is no relief that this Court can provide that would even remedy Mississippi's purported injury – a jurisdictional failure that independently requires dismissal. *See Lujan*, 504 U.S. at 561. As noted above, Mississippi has not alleged that the deferred action decisions contemplated by the Secretary's memorandum would result in costs for Mississippi. But if Mississippi *had* actually alleged the existence of specific burdens related to these deferred action decisions, any such allegation would presumably be geared toward asking this court to relieve such burdens by ordering the Executive Branch to remove those specific individuals. But such relief is unavailable, and Mississippi's claim therefore fails to satisfy Article III's redressability requirement.

DHS must make choices as to where to most effectively allocate its removal resources, and Mississippi does not allege anything to the contrary. Mississippi does not and, of course, cannot challenge the Secretary's general authority to exercise prosecutorial discretion. *See Arizona v. United States*, 132 S. Ct. at 2499 ("A principal feature of the removal system is the broad discretion exercised by immigration officials."); *Texas v. United States*, 106 F.3d 661, 667 (5th Cir. 1997) ("[T]he State alleges that the Attorney General has breached a nondiscretionary duty to control immigration under the [INA]. The State candidly concedes, however, that [INA § 103] places no substantive limits on the Attorney

21

General and commits enforcement of the INA to her discretion.").  Federal governance of immigration and alien status is extensive and complex," and "[s]ome discretionary decisions involve policy choices that bear on this Nation's international relations."  *Arizona*, 132 S. Ct. at 2499; *see also id.* ("The equities of an individual case may [also] turn on many factors."). Mississippi has failed to allege how its purported injuries could actually be redressed, and thus Mississippi lacks standing on this independent basis.

## II.     Plaintiffs Lack Prudential Standing to Bring this Action Challenging the Secretary's Enforcement of the Immigration and Nationality Act.

In addition to lacking Article III standing, Plaintiffs also lack prudential standing. Prudential standing requires, *inter alia*, "that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provisions."  *Bennett v. Spear*, 520 U.S. 154, 162 (1997).  But neither the ICE officers nor the State of Mississippi are within the zone of interest of the provisions of the INA at issue in this case.  *See* Am. Compl. ¶¶ 72,79, 90, 103, 108, 115 (alleging for all six causes of action that neither 8 U.S.C. § 1103(a)(5) nor 8 C.F.R. § 2. 1 provides the Secretary with the authority to exercise prosecutorial discretion in the manner chosen or, for purposes of the Third Cause of Action, to provide employment authorization).[10]

---

[10] Plaintiffs' constitutional claims are subsumed by their statutory claims.  Their claim that Defendants have exercised legislative powers reserved to Congress, *see* Am. Compl., Fourth Cause of Action, ¶¶ 92-104, is grounded in their argument that Defendants lacked authority under the INA.  Likewise, Plaintiffs' claim that Defendants have not taken care in executing the laws, *see* Am. Compl., Fourth Cause of Action, ¶¶ 105-109, is based on their allegation that Defendants have violated statutory authority.

The Immigration and Nationality Act provides the Secretary with broad discretion to enforce its provisions. *See* 8 U.S.C. § 1103(a)(1) ("The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, Attorney General, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers"); *see also* 8 C.F.R. § 2.1 ("All authorities and functions of the Department of Homeland Security to administer and enforce the immigration laws are vested in the Secretary of Homeland Security.").   Plaintiffs are not within the zone of interest of these provisions, and the prudential standing doctrine does not allow maintenance of suit based on generic claims of injury purportedly resulting from unlawful immigration.  *See Fed'n for Am. Immigration Reform v. Reno*, 93 F.3d 897, 900 (D.C. Cir. 1996) (holding that plaintiffs lacked prudential standing to claim that "a rush of immigrants adversely affects the welfare of the Federation's members by generating unemployment and wage reductions and by placing burdens on public services"), *cert. denied*, 521 U.S. 1119 (1997); *see also id*. at 902-03 (the "immigration context suggests the comparative improbability of any congressional intent to embrace as suitable challengers in court all who successfully identify themselves as likely to suffer from the generic negative features of immigration.").

To the extent that Plaintiffs claim that their injuries result from a purported violation of a particular statutory provision, they are again not within the zone of interests.  The only statutory provision Plaintiffs claim is being violated is 8 U.S.C. § 1225(b)(2)(A).  But neither

23

ICE officers nor the State of Mississippi are within the zone of interest of this provision.

Rather, that provision establishes a procedure for aliens to be subject to removal proceedings.

*See id.*  And Congress provided a framework for aliens to contest such removals. 8 U.S.C. §

1252(a).  In a similar context, the D.C. Circuit has explicitly held that prudential standing

under the portions of 8 U.S.C. § 1225(b) related to expedited removal proceedings is

confined to aliens who seek to contest those proceedings.  *See Am. Immigration Lawyers*

*Assoc. v. Reno*, 199 F.3d 1352, 1359 (D.C. Cir. 2000) ("[w]hen we examine other

subsections of 8 U.S.C. § 1252(e) dealing with judicial review, we find signs that Congress

meant to allow *actions only by aliens* who have been subjected to the summary procedures

contained in § 1225(b) and its implementing regulations") (emphasis added).  Congress's

concern in setting up the procedures of § 1225(b) and § 1252 was to provide a framework for

aliens to contest their removals.  Accordingly, Plaintiffs lack prudential standing and, for this

reason alone, Plaintiffs' claims must be dismissed.

**III.     Plaintiffs' Claims Must, Alternatively, Be Dismissed for Improper Venue.**

As a final matter, this Court should alternatively dismiss this action for improper

venue.  *See* Fed. R. Civ. P. 12(b)(3).  "[V]enue cannot be based on the joinder of a plaintiff

with a frivolous claim or of a plaintiff who has been improperly and collusively joined for the

purpose of creating venue in the district."  *See* 14D Charles Alan Wright, Arthur R. Miller, &

Edward H. Cooper, FEDERAL PRACTICE & PROCEDURE § 3815.  And yet the entire

foundation for venue in this case is based on one of the ICE officer's (Plaintiff Engle's)

residence "in the Northern District of Texas," but for whom Plaintiffs have made no factual

allegations.  *See* Am. Compl. ¶ 27.  Without the inclusion of Plaintiff Engle, neither the other

ICE officers nor the State of Mississippi could establish venue.  *See id.* ¶¶ 9-18, 21 (failing to

allege that the other Plaintiffs reside in the Northern District of Texas).  But Plaintiff Engle

cannot establish standing even if this Court were to find that some of the other Plaintiffs had

standing, and, accordingly, Plaintiff Engle should be dismissed for lack of standing and the

remaining Plaintiffs should be dismissed for improper venue.

Even assuming, contrary to Fifth Circuit law, that a plaintiff's "mental disposition"

that the government's actions would cause him to violate his oath is sufficient to confer

standing, Plaintiff Engle would still be unable to establish standing.  As the Supreme Court

has explained, to show injury, harm must be "concrete and particularized" and "actual or

imminent, not 'conjectural' or 'hypothetical.'"  *Lujan*, 504 U.S. at 560-61.  However,

Plaintiff Engle merely *speculates* that he may be faced with a situation that he believes would

require him to violate his oath of office.  *See* Am. Compl. ¶¶ 47-49.   It is conjecture that

Plaintiff Engle will have the opportunity to arrest an individual for whom action may be

deferred subject to the DHS June 15 Memo.  Accordingly, as an alternative ground for

disposition, this action should be dismissed for improper venue.

## CONCLUSION

For the reasons stated herein, this action must be dismissed with prejudice.

25

Dated:  November 13, 2012             Respectfully Submitted,

STUART F. DELERY
Acting Assistant Attorney General

SARAH R. SALDANA
United States Attorney

IAN HEATH GERSHENGORN
Deputy Assistant Attorney General

SANDRA M. SCHRAIBMAN
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch

*/s/ Adam D. Kirschner*
ADAM D. KIRSCHNER (IL Bar #6286601)
Trial Attorney, Federal Programs Branch
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W.
Washington, DC 20530
(202) 353-9265
Adam.Kirschner@usdoj.gov

*Counsel for Defendants*

26