## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

CHRISTOPHER L. CRANE, *et al.*,            )
                                           )
                        Plaintiffs.        )
                                           )    Case No. 3:12-CV-3247-O
            v.                             )
                                           )
JANET NAPOLITANO, *et al.*,                )
                                           )
                        Defendants.        )
                                           )
                                           )
_____)

## DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE
## TO DEFENDANTS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................... 1

ARGUMENT............................................................................................................... 1

    I.     The Agent Plaintiffs Fail to Allege that They Personally Suffer Any
           Adverse  Consequence as a Result of Implementing the Challenged
           Memoranda. ...................................................................................... 1

           A.     Binding Fifth Circuit Precedent Dictates that a Government
                    Official's Perceived Violation of the Law in Doing One's Job
                    is Not a Concrete Injury. ............................................................ 1

           B.     Plaintiffs Wrongly Assert that a Government Official Creates a
                    Case or Controversy with His or Her Agency Simply By
                    Following Agency Guidance Affecting Work
                    Responsibilities. ....................................................................... 5

    II.    Mississippi Has Failed to Satisfy Its Burden of Demonstrating
           Standing. ........................................................................................... 6

           A.     Mississippi's Fiscal Cost Allegations Turn on Pure
                    Speculation.............................................................................. 6

           B.     Enjoining the Exercise of Prosecutorial Discretion is Not a
                    Proper Remedy......................................................................... 9

    III.   Neither the ICE Agents Nor the State of Mississippi Assert Any Injury
           That  Results from the U.S. Citizenship and Immigration Services
           Providing  Employment Authorization. .............................................. 9

CONCLUSION...................................................................................................... 10

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Forest & Paper Ass'n v. U.S. EPA*,
   137 F.3d 291 (5th Cir. 1998) ......................................................................... 6

*Arizona v. United States*,
   132 S. Ct. 2492 (2012) .................................................................................. 9

*Ayuda, Inc. v. Meese*,
   687 F. Supp. 650 (D.D.C. 1988) .................................................................. 4

*Broadway v. Block*,
   694 F.2d 979 (5th Cir. 1982) ........................................................................ 5

*Clinton v. City of New York*,
   524 U.S. 417 (1998) ...................................................................................... 7

*Donelon v. La. Div. of Admin. Law ex rel. Wise*,
   522 F.3d 564 (5th Cir. 2008) ................................................................. 2, 3, 5

*Drake v. Obama*,
   664 F.3d 774 (9th Cir. 2011) ........................................................................ 4

*Epperson v. Arkansas*,
   393 U.S. 97 (1968) ........................................................................................ 4

*Finch v. Miss. State Med. Ass'n, Inc.*,
   585 F.2d 765 (5th Cir. 1978) ..................................................................... 2, 3

*Gray v. City of Valley Park*,
   567 F.3d 976 (8th Cir. 2009) ........................................................................ 6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...................................................................................... 7

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999) ...................................................................................... 9

ii

*Rodgers v. Scott,*
    95 F.3d 47 (5th Cir. 1996) ................................................................................ 5

*Schlesinger v. Reservist Comm. to Stop the War,*
    418 U.S. 208 (1974).......................................................................................... 10

*Texas v. United States,*
    497 F.3d 491 (5th Cir. 2007) ............................................................................ 7

*Thye v. United States,*
    109 F.3d 127 (2d Cir. 1997).............................................................................. 9

*Towers v. Horner,*
    791 F.2d 1244 (5th Cir. 1986) .......................................................................... 5

*United States Postal Serv. v. Nat'l Ass'n of Letter Carriers,*
    330 F.3d 747 (6th Cir. 2003) ............................................................................ 4

*Villas at Parkside Partners v. City of Farmers Branch,*
    701 F. Supp. 2d 835 (N.D. Tex. 2010), ............................................................ 6

*Wyoming v. U.S. Dep't of the Interior,*
    674 F.3d 1220 (10th Cir. 2012) ............................................................... 6, 7, 8

**Statutes**

5 U.S.C. § 7103 ...................................................................................................... 5

8 U.S.C § 1103 ...................................................................................................... 10

8 U.S.C § 1225 .................................................................................................. 3, 10

8 U.S.C. § 1226 .................................................................................................... 10

**Regulations**

8 C.F.R. § 239.1 .................................................................................................... 10

8 C.F.R. § 274a.12 ................................................................................................ 10

iii

## INTRODUCTION

The Plaintiff Immigration and Customs Enforcement ("ICE") agents' attempt to restate their alleged injury only confirms that they cannot establish standing: although (like any employee) they may face consequences if they refuse to abide by their employer's guidance, they do not face any concrete (judicially cognizable) injury if they *abide* by the policy.  Because they have a course of action that will subject them to no injury, this Circuit's caselaw makes clear that they lack standing to bring this action.  Similarly, Plaintiffs' opposition highlights that the State of Mississippi's allegations as to fiscal costs rely on pure conjecture, and are not even redressable; Mississippi, therefore, cannot satisfy its standing burden.  Plaintiffs' action must be dismissed.[1]

## ARGUMENT

**I.    The Agent Plaintiffs Fail to Allege that They Personally Suffer Any Adverse Consequence as a Result of Implementing the Challenged Memoranda.**

**A.  Binding Fifth Circuit Precedent Dictates that a Government Official's Perceived Violation of the Law in Doing One's Job Is Not a Concrete Injury.**

Plaintiffs' opposition makes clear that the basis for Agent Plaintiffs' claimed injury is an inaccurate assertion that they face a Hobson's choice between two "injuries-in-fact:" one

---

[1] Although the focus of Plaintiffs' action is the Secretary of Homeland Security's memorandum of June 15, 2012, Plaintiffs also challenge a June 17, 2011 memorandum from the ICE Director that provides prosecutorial discretion guidance.  Besides lacking standing to challenge either memorandum, Plaintiffs' challenge to the Secretary's memorandum must be dismissed for lack of venue.  *See* Defs.' Mot. to Dismiss ("Defs.' MTD") (Dkt. # 23) at 24-25.  Plaintiff Engle does not allege that he personally has detained any individual eligible for consideration of deferred action under the criteria listed in the Secretary's memorandum.  *See* Engle Aff., Attached to Pls.' Resp. to Defs.' MTD ("Pls.' MTD Opp.") (Dkt. # 30)  ¶¶ 10-13 (exclusively listing actions related to the ICE Director memorandum).

1

which will inure if they violate the challenged memoranda, thereby risking potential adverse employment consequences as a result of their willful failure to abide by departmental policy; and one which allegedly will occur if they comply with the policies, thereby allegedly resulting in a violation of statutory duty and, thus, a violation of their oath of office. Plaintiffs' opposition thereby implicates a crucial aspect of this Circuit's standing analysis: that if faced with such a choice, standing is only established if Plaintiffs will suffer a cognizable Article III injury under *both* scenarios.  *See* Pls.' MTD Opp. at 6.  But here, under binding Fifth Circuit precedent, one of these two choices – abiding by departmental directions – does not, as a matter of law, constitute cognizable injury, *regardless* of whether Plaintiffs believe that such compliance would amount to a violation of a statutory duty or oath of office.  *See Donelon v. La. Div. of Admin. Law ex rel. Wise*, 522 F.3d 564 (5th Cir. 2008); *Finch v. Miss. State Med. Ass'n, Inc.*, 585 F.2d 765, 773-75 (5th Cir. 1978).

Contrary to Plaintiffs' assertion, Fifth Circuit precedent dictates that standing can only be established if some adverse consequence flows from the perceived violation of statutory duty; an alleged consequence resulting from refusing to comply with the challenged policy is insufficient as a matter of law.  *See* Pls.' MTD Opp. at 9-10 (incorrectly asserting that *Finch* and *Donelon* both recognized standing could be established if one faced a consequence in *refusing* to comply with the challenged action).  The logic is obvious: a plaintiff cannot satisfy standing simply based on the prospect of a voluntary choice to risk an adverse employment action based on a personal opinion about what the law requires.

2

In *Donelon*, the Fifth Circuit held that the Louisiana Insurance Commissioner lacked standing because he faced no personal consequence based on a failure to comply with perceived federal statutory obligations. *See Donelon*, 522 F.3d at 568 (finding that Donelon would suffer no consequence in "comply[ing] with Louisiana law," regardless of "his *opinion* of what federal law requires") (emphasis in original). The Commissioner, like the Plaintiffs in this case, could not demonstrate injury on the basis of an alleged violation of federal law that engendered no other tangible consequences.

Similarly, in *Finch*, the Fifth Circuit held Governor Finch lacked standing to allege, *inter alia*, that "he must violate his oath of office to uphold the laws of Mississippi if he ignores the [Mississippi] statute." *See Finch*, 585 F.2d at 773-74 (finding the Governor was "in no danger of expulsion from office as a result of any action that he alone believes *may have violated his oath*") (emphasis added). In other words, Governor Finch lacked standing because he could not establish that he would suffer an adverse consequence if he violated the Mississippi law at issue. Likewise, Plaintiffs here cannot establish standing because they cannot show they would suffer any harm based on taking action that, in their perception, would violate federal law.[2]

---

[2] Just as in *Finch*, the Plaintiffs' "mental disposition," which informs their subjective statutory interpretation, does not give them a "personal stake." *See Finch*, 585 F.2d at 774. Although it is not the subject of this motion, Defendants disagree with Plaintiffs' assertion that the "ICE Agent Plaintiffs clearly violate the *express terms* of 8 U.S.C §§ 1225(a)(3) and (b)(2)(A) when they follow the [challenged memoranda]." *See* Pls.' MTD Opp. at 12 (failing to distinguish *Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011)) (emphasis in original). As established in Defendants' forthcoming opposition to Plaintiffs' preliminary injunction motion, Defendants' actions are consistent with the statute.

3

The case upon which Plaintiffs chiefly rely, *Epperson v. Arkansas*, 393 U.S. 97 (1968), s*ee* Pls.' MTD Opp. at 4-5, only illustrates the infirmities in Plaintiffs' argument. In *Epperson*, school administrators instructed Epperson to use a textbook teaching Darwinism but doing so "would be a criminal offense and subject her to dismissal." *Epperson*, 393 U.S. at 100. In contrast to Plaintiffs in this case, Epperson faced a consequence – criminal sanctions – that would attach to compliance with her superiors' instructions.[3] Precisely *unlike* Epperson, Plaintiffs here have failed to identify *any* adverse consequence that would result from compliance with the challenged guidance. And this failure necessitates dismissal here. *See Drake v. Obama*, 664 F.3d 774, 780 (9th Cir. 2011) (rejecting standing where plaintiff had "available course of action which subjects [him] to no concrete adverse consequences — he can obey the orders of [his superiors]") (internal citations omitted).

Even under their erroneous reading of the statute, Plaintiffs have not suggested that they could be held liable for following their employer's instructions. Instead, Plaintiffs are forced to recognize that tangible injury would *only* result from refusal to comply with their employer's instructions. But the federal courts are not available to employees who wish to test their legal theories based on personal opinions about what the law requires. Plaintiffs

---

[3] The other cases that Plaintiffs rely upon, which do not involve a government employee's actions, again demonstrate that a plaintiff needs to establish some injury that would flow from the perceived statutory violation. *See, e.g.*, *United States Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 330 F.3d 747, 751 (6th Cir. 2003) ("The Postal Service is faced with a reasonable threat of liability if compliance with the arbitration order violates the [statute]."); *Ayuda, Inc. v. Meese* 687 F. Supp. 650, 656 (D.D.C. 1988) (challenged regulation allegedly violated the statute but also purportedly subjected plaintiffs to liability).

would suffer no consequence in complying with their superiors' instructions; their challenges to that exercise of discretion must be dismissed.

**B. Plaintiffs Wrongly Assert that a Government Official Creates a Case or Controversy with His or Her Agency Simply By Following Agency Guidance Affecting Work Responsibilities.**

The Agent Plaintiffs' inability to identify tangible injury is exposed by their alternative, boundless claim that their mere participation in immigration enforcement renders them injured by the challenged policy. *See* Pls.' MTD Opp. at 12-14. This argument fails. First, it establishes that the Agent Plaintiffs' claim is, at root, a federal employment dispute for which this Court lacks jurisdiction. *See* 5 U.S.C. § 7103(a)(9)(C)(ii) (Civil Service Reform Act ("CSRA") grievance includes any "any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment"); *see also, e.g., Rodgers v. Scott*, 95 F.3d 47 (5th Cir. 1996) (unpublished) (Plaintiffs "may not circumvent the detailed scheme of the CSRA" which limits jurisdiction) (citing *Broadway v. Block*, 694 F.2d 979 (5th Cir. 1982)).[4]  Second, a government employee responsible for carrying out an agency policy does not have standing to challenge that policy merely because of work responsibilities related to that policy. *See Donelon*, 522 F.3d at 568 (standing does

---

[4] Regardless of whether Plaintiffs have recourse under the Merit Systems Protection Board for suspensions of fewer than 14 days, *see* Pls' MTD Opp. at 15-16, "the exhaustive remedial scheme of the CSRA would be impermissibly frustrated" by allowing access to the courts for lesser employment grievances than the statute would otherwise provide. *See Towers v. Horner*, 791 F.2d 1244, 1246 (5th Cir. 1986) (quotations and citations omitted).

not attach because of some tangential connection to the challenged policy).[5]  Were it otherwise, any government employee could challenge any government policy – a theory of standing that would eviscerate the federal courts' regular caution that standing should be limited to individuals with a genuine stake in the dispute.

II.    **Mississippi Has Failed to Satisfy Its Burden of Demonstrating Standing.**

A.  **Mississippi's Fiscal Cost Allegations Turn on Pure Speculation.**

In its opening motion, the United States described the raw speculation underlying Plaintiff Mississippi's claimed injury.  Consequently, Plaintiffs have gone to great lengths to suggest that the State was burdened by the costs of unlawfully present aliens *before* the advent of the challenged memoranda – a set of statistics that, even if true, plainly does not establish that the challenged memoranda are *exacerbating* Mississippi's claimed plight.

Plaintiffs completely ignore the case most analogous to this one: *Wyoming v. U.S. Dep't of the Interior*, 674 F.3d 1220, 1231-35 (10th Cir. 2012).  In *Wyoming,* the Tenth Circuit found that the State lacked standing to bring a "generalized grievance" alleging that a National Park Service Rule governing the use of snowmobiles imposed a fiscal impact on the

---

[5] None of the cases Plaintiffs rely upon relate to an employee challenging an employer's policies.  In addition, in all three cases, the alleged administrative burden created independent injuries.  *See Am. Forest & Paper Ass'n v. U.S. EPA* 137 F.3d 291 (5th Cir. 1998) (finding plaintiffs' claims that it would, *inter alia,* incur costs in complying with permit regulation was sufficient to establish injury-in-fact); *Villas at Parkside Partners v. City of Farmers Branch*, 701 F. Supp. 2d 835, 848 (N.D. Tex. 2010) (holding that plaintiffs "provided evidence of sufficient harm to their own financial and property interests"), *aff'd on other grounds*, 675 F.3d 802 (5th Cir. 2012, vacated on grant of reh'g *en banc*); *Gray v. City of Valley Park*, 567 F.3d 976, 986 (8th Cir. 2009) (finding business challenging City ordinance had injury-in-fact because ordinance would impact the business's "hiring process").

6

State.  *See Wyoming*, 674 F.3d at 1234.[6]  Likewise, Plaintiffs here have not met their burden to allege a sufficiently concrete injury to Mississippi.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Mississippi disregards contrary factual evidence to assert that the challenged memoranda's emphasis on high priority cases will result in fewer removals (and thus, allegedly, more unlawfully present aliens in Mississippi).  *See* Plfs.' MTD Opp. at 18.  This argument simply ignores the fact that the total number of removals, and criminal alien removals in particular, actually increased during the period (2010 to 2011) when one of the two memoranda being challenged was in effect.  *See* ICE Removal Statistics – Charts and Graphs, available at http://www.ice.gov/removal-statistics/ (last visited December 18, 2012).  Plaintiffs also ignore the very purpose of the challenged memoranda is not to reduce the number of removals but, rather, to "ensure that [the Department's] enforcement resources are not expended on [] low priority cases but are instead appropriately focused on people who meet [the Department's] enforcement priorities," s*ee* June 15, 2012, Memorandum from the Secretary, Attached as Attachment 1 to Plaintiffs' Amended Complaint – a clear rejection of Mississippi's theory of injury that cannot be contravened by Mississippi's reliance on three anecdotal declarations supposedly observing a decrease in removals.  *See* Plfs.' MTD Opp. at

---

[6] Plaintiffs instead rely on cases that addressed the economic injury of the Federal government's regulation *of the State*.   *See* Pls.' MTD Opp. at 17 (citing *Texas v. United States*, 497 F.3d 491, 493-95 (5th Cir. 2007) (challenging procedures for state gaming licenses); and *Clinton v. City of New York*, 524 U.S. 417, 422 (1998) (challenging use of line-item veto for statutory waiver of New York's tax obligation)).  Here, of course, the memoranda do not regulate the State, nor are they aimed at the State in any respect.

18.  These types of conclusory declarations are entitled to no weight, especially in the face of established factual evidence to the contrary and the Department's own stated goals.  *See Wyoming*, 674 F.3d at 1232 (rejecting conclusory declaration).

Tellingly, Plaintiffs have not presented any evidence to establish that the challenged guidance memoranda will actually result in a fiscal burden for Mississippi.  Plaintiffs speculate that the focus on high removal priorities must result in a fiscal cost because a 2006 Audit concludes that illegal immigration poses a fiscal cost to Mississippi.  *See* Plfs.' MTD Opp. at 16, 17.  But the 2006 Audit has nothing to do with whether the *challenged memoranda* actually result in a fiscal cost.  *See Wyoming*, 674 F.3d at 1232 (rejecting 15-year old study pre-dating challenged rule).  Even if the presence of unlawfully present aliens results in cognizable fiscal injury, Mississippi's allegations do nothing to suggest that the guidance's focus of removal resources on *high* priority aliens is itself an independent source of injury.[7]  The State's position is based on pure conjecture, which hardly can form the basis for the extraordinary relief it seeks.

In sum, Mississippi has failed to establish its burden that the challenged memoranda have caused a particularized injury, and accordingly its claims must be dismissed.

---

[7] In fact, the very premise of the argument is flawed: as Mississippi acknowledges in that 2006 Audit, a State receives a fiscal benefit in taxes paid by undocumented aliens.  *See* Pls.' MTD Opp. at 16.  If anything, Mississippi's tax base may increase because individuals affected by the June 15, 2012 memorandum are now eligible to apply for employment authorization.  Further, these individuals must have already been in this country for over five years, which independently demonstrates that these individuals would not necessarily have been removed.

8

**B.  Enjoining the Exercise of Prosecutorial Discretion is Not a Proper Remedy.**

Mississippi also lacks Article III standing because the remedy it seeks is not legally available.  Plaintiffs assert that this Court could redress Mississippi's claimed injuries by enjoining the implementation of the challenged memoranda.  *See* Plfs.' MTD Opp. at 19-20. But because Mississippi's claimed fiscal injuries purportedly result from the presence of unlawfully present aliens, the only remedy that would redress this claim would require an order that the federal government actually remove certain individuals.  However, such an order would conflict with settled law.[8]

**III.    Neither the ICE Agents Nor the State of Mississippi Assert Any Injury That Results from the U.S. Citizenship and Immigration Services Providing Employment Authorization.**

Plaintiffs similarly fail to demonstrate that any injury results from grants of employment authorization by U.S. Citizenship and Immigration Services ("USCIS"), and therefore lack standing to advance this claim.  Plaintiffs have not disputed that they have no involvement in this process.  Instead, they make the irrelevant point that the provision of employment authorization by *USCIS* follows from decisions on deferred action.  *See* Plfs.' MTD Opp. at 20.  But the availability of employment authorization derives from a pre-

---

[8] *See Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012) ("A principal feature of the removal system is the broad discretion exercised by immigration officials."); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483-84 (1999) (instructing that "[a]t each stage the Executive has discretion to abandon the endeavor" of an immigration enforcement action); *see also Thye v. United States*, 109 F.3d 127, 128 (2d Cir. 1997) (per curiam) ("whether or not one is to be deported ... prior to completing a prison term is a matter solely within the discretion of the Attorney General").

existing regulation that Plaintiffs do not challenge.  8 C.F.R. § 274a.12(c)(14).

The fact that employment authorization ordinarily follows from a decision to defer action does not mean there is any independent injury to Plaintiffs from USCIS employment authorization decisions (even if those USCIS decisions take a deferred action decision as their starting point).  Similarly, Mississippi has articulated no injury.  Among other things, Mississippi cannot assert that employment authorization imposes any fiscal cost: to the contrary, if anything, exercises of deferred action may increase Mississippi's tax base by resulting in employment authorization for those whose cases are deferred.

## CONCLUSION[9]

For the reasons stated herein and in Defendants' Memorandum in Support of Defendants' Motion to Dismiss, this action must be dismissed with prejudice.[10]

_____

[9] Plaintiffs also lack prudential standing. Neither Mississippi nor the Agent Plaintiffs are within the zone of interest of the statute's broad enforcement discretion provision, 8 U.S.C § 1103.  *See* Defs.' MTD at 23.   The Agent Plaintiffs also cannot challenge the application of 8 U.S.C §§ 1225(a)(3) and (b)(2)(A).  *See* Pls.' MTD Opp. at 15.  These statutory provisions do not regulate ICE agents.  These particular ICE agents do not even have authority to issue an undocumented alien a Notice to Appear (NTA), which Plaintiffs claim is mandated by 8 U.S.C §§ 1225(a)(3) and (b)(2)(A).  The named Agent Plaintiffs are either Immigration Enforcement Agents (IEAs) or Deportation Officers (DOs), *see* Pls.' Am. Compl. ¶¶ 9-18, but the officers authorized to issue an NTA do not include IEAs or DOs, *see* 8 C.F.R. § 239.1(a).  Further, when the statute speaks in the passive voice of an alien being detained, *see* 8 U.S.C § 1225(b)(2)(A), it is not regulating the conduct of the immigration officer but instead providing the Agency head with that authority.  *See, e.g.*, 8 U.S.C. § 1226(c) ("the Attorney General [(now Secretary of Homeland Security)] shall take into custody any alien who . . . (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) . . . or (D) is inadmissible under section 1182(a)(3)(B) of this title . . . .").
[10] Contrary to Plaintiffs' contention, *see* Pls.' MTD Opp. at 24, standing does not depend on whether any other individual or entity would have standing.  *See Schlesinger v. Reservist Comm. to Stop the War*, 418 U.S. 208, 227 (1974).

Dated:  December 18, 2012          Respectfully Submitted,

STUART F. DELERY
Principal Deputy Assistant Attorney General

SARAH R. SALDANA
United States Attorney

IAN HEATH GERSHENGORN
Deputy Assistant Attorney General

*/s/ Adam D. Kirschner*
ADAM D. KIRSCHNER (IL Bar #6286601)
BRADLEY H. COHEN (DC Bar #495145)
Trial Attorneys, Federal Programs Branch
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W.
Washington, DC 20530
(202) 353-9265
Adam.Kirschner@usdoj.gov
Bradley.Cohen@usdoj.gov

*Counsel for Defendants*

11