**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER L. CRANE, *et al.*, | ) | |
| | ) | |
| Plaintiffs. | ) | |
| | ) | Case No. 3:12-CV-3247-O |
| v. | ) | |
| | ) | |
| JANET NAPOLITANO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
<u>APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

I.    The Department of Homeland Security's Memoranda
      Providing Guidance on the Prioritization of
      Enforcement Efforts. ........................................................................... 2

II.   The Executive Branch is Authorized to Exercise
      Substantial Discretion in the Immigration Context. ........................... 4

ARGUMENT ........................................................................................................ 6

I.    Plaintiffs Cannot Meet the Elements Required to Warrant a
      Preliminary Injunction. ....................................................................... 7

      A.    Plaintiffs Cannot Demonstrate a Likelihood of
            Irreparable Injury Absent an Injunction. .................................... 7

            1.    Agent Plaintiffs Cannot Demonstrate Imminent
                  Irreparable Injury Where They Have an
                  Available Choice to Avoid Injury Altogether. .................. 8

            2.    The Alleged Risk of Discipline for Failure to Comply
                  with Agency Guidance Does Not Constitute
                  Irreparable Injury that May Serve as a Basis for
                  Injunctive Relief. ............................................................. 8

            3.    Plaintiffs cannot claim to be irreparable injured
                  by the challenged guidance memoranda because
                  those memoranda do not even implicate
                  Plaintiffs' specific employment
                  responsibilities. ............................................................. 10

            4.    The State of Mississippi Has Failed to Allege
                  Any Irreparable Injury. .................................................. 10

      B.    Plaintiffs Cannot Demonstrate That They Are Likely
            to Prevail the Merits. ............................................................... 12

            1.    Plaintiffs Lack Standing to Bring
                  Their Claims. ................................................................. 12

i

2.  This Court Lacks Jurisdiction Because
    Immigration Enforcement is Committed to
    Agency Discretion............................................................ 12

3.  This Court Lacks Jurisdiction Because Plaintiffs'
    Employment Grievance May Only Proceed
    Under the CSRA.............................................................. 16

4.  Even if this Court had Jurisdiction, Plaintiffs
    Could Not Prevail on the Merits of Any
    of their Claims ............................................................... 17

    a.  Section 1225(b) Does Not Mandate the
        Issuance of NTAs to all Unlawfully
        Present Aliens........................................................ 17

    b.  Plaintiffs' Attempt to Recast the Alleged
        Statutory Violation as a Separation of Powers
        Violation Should be Rejected................................ 20

    c.  The Secretary's Guidance Regarding the
        Exercise of Prosecutorial Discretion is
        Not Subject to Notice and Comment.................... 21

    d.  The Secretary's Memorandum is Consistent
        with a Pre- Existing Regulation Allowing
        USCIS to Consider  Employment
        Authorization for those whose Action
        has been Deferred. ................................................ 22

C.  Enjoining the Secretary's Directive Would Harm
    Both Defendants and  the Public Interest................................ 23

CONCLUSION........................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Richardson,*
   480 F.2d 1159 (D.C. Cir. 1973) ........................................................................................ 13

*Appling Cnty. v. Mun. Elec. Auth. of Ga.,*
   621 F.2d 1301 (5th Cir. 1980) ......................................................................................... 12

*Arizona v. United States,*
   132 S. Ct. 2492 (2012) ............................................................................................... passim

*Broadway v. Block,*
   694 F.2d 979 (5th Cir. 1982) ........................................................................................... 16

*Califano v. Yamasaki,*
   442 U.S. 682 (1979) ........................................................................................................ 25

*Chacon v. Granata,*
   515 F.2d 922 (5th Cir. 1975) ............................................................................................. 9

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
   467 U.S 837 (1984) .................................................................................................... 19, 20

*Chicago v. Morales,*
   527 U.S. 41 (1999) .......................................................................................................... 19

*Criterion Brock, Inc. v. Aguirre,*
   2011 WL 2517319 (S.D. Tex. June 23, 2011) ................................................................... 9

*Donelon v. La. Div. of Admin. Law ex rel. Wise,*
   522 F.3d 564 (5th Cir. 2008) ............................................................................................. 8

*Drake v. Obama,*
   664 F.3d 774 (9th Cir. 2011) ............................................................................................. 8

*Dunlop v. Bachowski,*
   421 U.S. 560 (1975) ........................................................................................................ 13

*Finch v. Miss. State Med. Ass'n, Inc.,*
   585 F.2d 765 (5th Cir. 1978) ............................................................................................. 8

*Freytag v. Comm'r of Internal Revenue,*
    501 U.S. 868 (1991)................................................................................................ 18

*Heckler v. Chaney,*
    470 U.S. 821 (1985)..................................................................................... 1, 13, 20

*Immigration & Naturalization Serv. v. Chadha,*
    462 U.S. 919 (1983)................................................................................................ 20

*Karsha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,*
    335 F.3d 357 (5th Cir. 2003) .................................................................................... 7

*Knauff v. Shaughnessy,*
    338 U.S. 537 (1950).................................................................................................. 4

*Lincoln v. Vigil,*
    508 U.S. 182 (1993)................................................................................................ 21

*Lion Health Serv., Inc. v. Sebelius,*
    635 F.3d 693 (5th Cir. 2011) .................................................................................. 25

*Matter of E-R-M & L-R-M,*
    25 I. & N. Dec. 520 (BIA 2011) ............................................................................. 19

*Montgomery v. U.S. Army Corps of Engineers,*
    128 F. Supp. 2d 433 (S.D. Tex. 2001) ................................................................... 17

*Morales v. Dep't of the Army,*
    947 F.2d 766 (5th Cir. 1991) .................................................................................. 17

*Morland v. Sprecher,*
    443 U.S. 709 (1979).................................................................................................. 7

*Munaf v. Geren,*
    553 U.S. 674 (2008)................................................................................................ 12

*Norton v. S. Utah Wilderness Alliance,*
    542 U.S. 55 (2004).................................................................................................. 25

*Orellana-Monson v. Holder,*
    685 F.3d 511 (5th Cir. 2012) .................................................................................. 20

iv

*Plasi v. Mineta*,
   212 Fed. App'x 287 (5th Cir. 2006) ................................................................. 16

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999) ........................................................................... 5, 14, 15

*Ridgely v. FEMA,*,
   512 F.3d 727 (5th Cir. 2008) ......................................................................... 23

*Riverkeeper, Inc. v. Collins*,
   359 F.3d 156 n.17 (2d Cir. 2004) .................................................................. 13

*Rodgers v. Scott*,
   95 F.3d 47 (5th Cir. 1996) ............................................................................. 16

*Rollins v. Marsh*,
   937 F.2d 134 (5th Cir. 1991) ......................................................................... 16

*Sampson v. Murray*,
   415 U.S. 61 (1974) ......................................................................................... 10

*Smith v. Booth*,
   823 F.2d 94 (5th Cir. 1987) ........................................................................... 13

*St. Tammany Parish, ex rel. Davis v. FEMA,*,
   556 F.3d 307 (5th Cir. 2009) .................................................................... 13, 21

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
   132 S. Ct. 1997 (2012) ................................................................................... 19

*Texas v. United States*,
   106 F.3d 661 (5th Cir. 1997) ......................................................................... 14

*Town of Castle Rock v. Gonzales*,
   545 U.S. 748 (2005) ....................................................................................... 19

*United States v. Batchelder*,
   442 U.S. 114 (1979) ....................................................................................... 19

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ......................................................................................... 6, 7

v

**Statutes**

5 U.S.C. § 701 ................................................................................................................ 21

5 U.S.C. § 7103 .............................................................................................................. 16

5 U.S.C. § 7121 ................................................................................................................ 9

8 U.S.C. § 1103 .......................................................................................................... 4, 14

8 U.S.C. § 1225 ...................................................................................................... passim

8 U.S.C. § 1226 .............................................................................................................. 18

8 U.S.C. § 1252 .............................................................................................................. 15

28 U.S.C. § 1331 ............................................................................................................ 12

**Regulations**

8 C.F.R. §1.2 ................................................................................................................. 19

8 C.F.R. § 2.1 ................................................................................................................. 14

8 C.F.R. § 235.3 ....................................................................................................... 18, 19

8 C.F.R. § 236.1 ............................................................................................................. 18

8 C.F.R. § 239.1 ............................................................................................................. 10

8 C.F.R. § 274a.12 ................................................................................................... 22, 23

## <u>INTRODUCTION</u>

Plaintiffs do not, and cannot, demonstrate any basis for granting their requested preliminary injunction.  Plaintiffs – ten Immigration and Customs Enforcement ("ICE") agents and the State of Mississippi – have failed to establish that they are likely to suffer any imminent irreparable injury absent an injunction: on this basis alone, Plaintiffs' Application for Preliminary Injunctive Relief must be denied.  In fact, Plaintiffs have not demonstrated that they will suffer any injury at all – irreparable or otherwise – a deficiency that simultaneously confirms their lack of standing and their inability to meet their burden for a preliminary injunction.  The Agent Plaintiffs have not even attempted to show that adverse consequences – in their employment or otherwise – will result from implementation of the challenged agency memoranda.  Mississippi's claimed (and wholly speculative) fiscal concerns similarly constitute neither cognizable harm nor irreparable injury.

Even if Plaintiffs could demonstrate irreparable injury, a preliminary injunction is inappropriate because Plaintiffs cannot demonstrate the requisite likelihood of success on the merits.  The Plaintiffs' lack of standing is only one of these failings.  The challenged action here (an agency's issuance of memoranda providing guidance on how it will prioritize its enforcement efforts) is inherently a matter committed to agency discretion by law for which this Court lacks jurisdiction.  *See Heckler v. Chaney*, 470 U.S. 821 (1985).  Additionally, the Agent Plaintiffs' claims essentially constitute employment disputes that this Court also lacks jurisdiction to review.

1

Plaintiffs' argument, moreover, proceeds from a flawed statutory premise.  Although Plaintiffs claim that 8 U.S.C. § 1225(b)(2)(A) strips the United States of prosecutorial discretion over immigration enforcement, that inflexible and erroneous statutory interpretation – which forms the core of Plaintiffs' challenge – is directly contradicted by Supreme Court precedent and controlling agency interpretations. The Supreme Court recently rejected the very arguments that Plaintiffs assert here, making clear that the federal government's discretion over immigration enforcement includes discretion on whether to commence removal proceedings.  *See Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012).

As a final matter, the balance of harms and public interest weigh heavily against granting the preliminary relief being requested.  The requested preliminary injunction – which Plaintiffs have sought long after the implementation of the guidances they are challenging – could (i) pose a safety risk by diverting much-needed resources from the removal of aliens who are serious criminals, repeat offenders, or who otherwise pose national security risks; and (ii) be contrary to the public interest by precluding the Department from considering individual circumstances.

For any of these reasons, this Court should deny Plaintiffs' motion.

## BACKGROUND

I.   **The Department of Homeland Security's Memoranda Providing Guidance on the Prioritization of Enforcement Efforts.**

Over the past two years, the Secretary of Homeland Security and the Director of ICE have issued updated guidance to Department personnel on how to expend the Department's

2

scarce enforcement resources to best effectuate the Department's enforcement priorities.[1]

Plaintiffs seek to enjoin the continued implementation of these guidance memoranda (one of

which has been in effect for over a year) through this motion.

On June 17, 2011, the ICE Director issued a memorandum specifically

relying "[up]on several existing memoranda related to prosecutorial discretion" to prioritize

the use of ICE's enforcement personnel, detention space, and removal assets.  ICE June 17,

2011 Memo at 1-2.  This prioritization was necessary to "promot[e] national security, border

security, public safety, and the integrity of the immigration system."  *See id*. at 2.  Moreover,

the memorandum's direction on the appropriate use of discretion extended to all stages of a

removal proceeding, including but not limited to the decision "to issue, reissue, serve, file, or

cancel a Notice to Appear (NTA)."  *Id.*  The memorandum notes a preference to exercise

discretion as early in the case as possible to preserve government resources.  *Id*. at 5.

On June 15, 2012, the Secretary of Homeland Security issued another memorandum

regarding the prioritization of agency enforcement efforts and the possibility of deferred

action in certain cases – an administrative tool for managing the removal process.  The

Secretary specifically sought to "ensure that [the Department of Homeland Security's

("DHS")] enforcement resources are not expended on low priority cases [involving people

---

[1]*See* Memo. from ICE Director John Morton, Civil Immigration Enforcement: "Exercising
Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the
Agency for the Apprehension, Detention, and Removal of Aliens" (June 17, 2011) ("ICE
June 17, 2011 Memo") (Attachment A) at 1; June 15, 2012, Memo. from the Sec'y to David
V. Aguilar, Acting Comn'r of U.S. Customs and Border Prot. ("CBP"), Alejandro Mayorkas,
Dir. of U.S. Citizenship and Immigration Servs. ("USCIS"), and John Morton, Dir. of ICE
("DHS June 15, 2012 Memo") (Attachment B) at 1.

who were brought to this country as children] but are instead appropriately focused on people

who meet [the Department's] enforcement priorities."  DHS June 15, 2012 Memo at 1.  The

DHS Memo establishes criteria that agency personnel are to consider in exercising discretion,

but also makes clear that the exercise of deferred action is "to be decided on a case by case

basis," and "DHS cannot provide any assurance that relief will be granted in all cases."  *Id*. at

2.  The Secretary's memorandum also notes that for individuals whose removal is deferred,

USCIS shall accept applications to determine whether these individuals qualify for

employment authorization during this period of deferred action.  *See id*. at 3.

On November 28, 2012, more than three months after Plaintiffs filed their original

Complaint, Plaintiffs filed this motion for a preliminary injunction seeking to enjoin the

application of these two memoranda – even though one of them had been already in effect for

almost 18 months.[2]

## II.     The Executive Branch is Authorized to Exercise Substantial Discretion in the Immigration Context.

Congress has charged the Secretary of Homeland Security and her designees with the

enforcement of the nation's immigration laws, *see* 8 U.S.C. § 1103(a), and, in so doing, has

crafted "a field where flexibility . . . constitute[s] the essence of the program."  *Knauff v.*

*Shaughnessy*, 338 U.S. 537, 543 (1950).  Congress has repeatedly ratified efforts by the

Executive Branch to order its enforcement activities, having directed DHS to "prioritize the

identification and removal of aliens convicted of a crime by the severity of that crime."  *See,*

---

[2]*See* Pls.' Br. in Support of Pls' Application for Prelim. Inj. (Dkt. # 26) ("Pls.' PI Br.") at 1.

*e.g.*, DHS Appropriations Act, 2012, Pub. L. No. 112-74, Div. D, Tit. II, 125 Stat. 786, 950

(2011).[3]  Congress likewise agreed that DHS should not "simply round[] up as many illegal

immigrants as possible, which is sometimes achieved by targeting the easiest and least

threatening among the undocumented population," but that DHS is better served by

"ensur[ing] that the government's huge investments in immigration enforcement are

producing the maximum return in actually making our country safer."  *See* H.R. Rep. 111-

157, at 6 (2009) (accompanying H.R. 2892, 111th Cong. (2009) (enacted as amended)).

Consistent with its limited resources and need to prioritize its efforts so as to

maximize effectiveness, the Executive Branch has long exercised prosecutorial discretion in

the immigration context, including in the form of deferred action – a practice that the

Supreme Court has specifically endorsed.  *See Reno v. Am.-Arab Anti-Discrimination Comm.*

("*AAADC*"), 525 U.S. 471, 483-84 (1999) ("At each stage [of the removal process] the

Executive has discretion to abandon the endeavor, and at the time Illegal Immigration

Reform and Immigrant Responsibility Act of 1996 (IIRIRA) was enacted the INS had been

engaging in a regular practice (which had come to be known as 'deferred action') of

exercising that discretion for humanitarian reasons or simply for its own convenience").  The

---

[3]*See also* DHS Appropriations Act, 2010, Pub. L. No. 111-83, Tit. II, 123 Stat. 2142 (2009)
(same); DHS Appropriations Act, 2009, Pub. L. No. 110-329, Div. D, Tit. II, 122 Stat. 3659
(2008) (same).

direction to immigration enforcement personnel to use discretion as appropriate on a case-by-case basis dates back to at least 1976.[4]

Just last term, the Supreme Court explicitly recognized the Executive Branch's authority to exercise prosecutorial discretion in immigration enforcement, including in decisions – like those challenged here – deferring the initiation of removal proceedings. *See Arizona*, 132 S. Ct. at 2499 (finding a "principal feature of the removal system is the broad discretion exercised by immigration officials"); *id*. ("[f]ederal officials, as an initial matter, must decide whether it makes sense to pursue removal at all").

## ARGUMENT

To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that a balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008).  "[A]

---

[4]*See also* Sam Bernsen, Immigration and Naturalization Serv. (INS) General Counsel, Legal Op. Regarding Service Exercise of Prosecutorial Discretion 2 (July 15, 1976) (Attachment C) (noting the Executive Branch's "inherent authority" to exercise prosecutorial discretion); Doris Meissner, INS Comm'r, Exercising Prosecutorial Discretion at 2 (Nov. 17, 2000) ("Meissner 2000 Memo") (Attachment D) (directing, following the enactment of IIRIRA, that prosecutorial discretion "applies not only to the decision to issue, serve, or file a Notice to Appear (NTA), but also to a broad range of other discretionary enforcement decisions," such as  "granting deferred action or staying a final order"); William J. Howard, Principal Legal Advisor, Prosecutorial Discretion at 2 (Oct. 24, 2005) ("Howard 2005 Memo") (Attachment E) (recognizing, after the formation of DHS that the "universe of opportunities to exercise prosecutorial discretion is large," including "in the pre-filing stage, when, for example, we can advise clients who consult us whether or not to file NTAs"); Julie L. Myers, Assistant Sec'y, Prosecutorial and Custody Discretion (Nov. 7, 2007) (Attachment F) (recommending the exercise of prosecutorial discretion for nursing mothers).

preliminary injunction is 'an extraordinary remedy' which should only be granted if the party

seeking the injunction has 'clearly carried the burden of persuasion' on all four

requirements." *See Karsha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan*

*Gas Bumi Negara*, 335 F.3d 357, 363-64 (5th Cir. 2003) (citation omitted).

I.     **Plaintiffs Cannot Meet the Elements Required to Warrant a Preliminary Injunction.**

     A.     **Plaintiffs Cannot Demonstrate a Likelihood of Irreparable Injury Absent an Injunction.**

Plaintiffs' lack of irreparable harm – indeed, any cognizable harm – is dispositive.

Plaintiffs' desired preliminary relief here is entirely inconsistent with the Supreme Court's

insistence that this type of "extraordinary" relief not be "based only on a *possibility* of

irreparable harm," but rather awarded upon a "*clear showing*" by Plaintiffs. *Winter*, 555 U.S.

at 22 (emphasis added). Plaintiffs' collection of a small set of non-cognizable, hypothetical

harms, *see* Pls.' PI Br. at 22-23, is insufficient as a matter of law because these alleged

injuries are speculative and certainly not imminent or irreparable. Plaintiffs' delay in filing

their preliminary injunction motion for almost eighteen months after the issuance of the ICE

June 17, 2011 Memo, and more than five months after the issuance of the DHS June 15, 2012

Memo further demonstrates lack of any imminent irreparable injury. *See Morland v.

Sprecher*, 443 U.S. 709, 710 (1979) (rejecting request for expedited review because

petitioner waited two and a half months before making request). Plaintiffs' motion

accordingly must fail based on this threshold lack of irreparable harm.

7

### 1. Agent Plaintiffs Cannot Demonstrate Imminent Irreparable Injury Where They Have an Available Choice to Avoid Injury Altogether.

Agent Plaintiffs allege harms that do not constitute sufficiently cognizable injuries under Article III to confer standing, much less irreparable injury. The Agent Plaintiffs' claims are predicated on the alleged injury that would purportedly result if the agents fail to follow the guidance issued by the Department. But, as discussed in the government's motion to dismiss, Plaintiffs have failed to demonstrate that *any* consequence will befall Agent Plaintiffs if they simply comply with their employer's instructions. It is of course true that failure to abide by an employer's instructions may result in employment consequences. Yet, this injury is wholly avoidable if Plaintiffs *comply* with the challenged memoranda – an available option that would leave Plaintiffs wholly uninjured, and that, as a result, dispositively undermines Plaintiffs' standing. *See Donelon v. La. Div. of Admin. Law ex rel. Wise*, 522 F.3d 564, 568 (5th Cir. 2008); *Finch v. Miss. State Med. Ass'n, Inc.,* 585 F.2d 765, 773-775 (5th Cir. 1978); *see also Drake v. Obama*, 664 F.3d 774, 780 (9th Cir. 2011).[5]

### 2. The Alleged Risk of Discipline for Failure to Comply with Agency Guidance Does Not Constitute Irreparable Injury that May Serve as a Basis for Injunctive Relief.

Additionally, allegations as to the risk of discipline for failure to comply with agency guidance do not demonstrate irreparable injury, both because of no imminent risk of discipline and because a separate statutory scheme is available for review of discipline.

---

[5] Further explanation of why Plaintiffs lack standing is provided in the United States' motion to dismiss briefing. *See* Defs.' Motion to Dismiss ("Defs.' MTD") (Dkt. # 23) at 11-16; Defs.' Reply to Defs.' MTD ("Defs.' MTD Reply") (Dkt. # 33) at 1-5.

8

The Agent Plaintiffs cannot claim imminent irreparable harm of discipline, *see* Pls.'
PI Br. at 22, as they neither are the subject of actual discipline, nor can they plausibly argue
that they are facing imminent suspension or termination.[6]  Hence, the Agent Plaintiffs cannot
establish a likelihood of imminent irreparable injury necessary for a preliminary injunction.
*See Chacon v. Granata,* 515 F.2d 922, 925 (5th Cir. 1975); *Criterion Brock, Inc. v. Aguirre*,
2011 WL 2517319, at *3 (S.D. Tex. June 23, 2011).

Even if the Agent Plaintiffs were facing immediate discipline, they could not satisfy
their irreparable harm burden, because any harm could readily be addressed – *i.e.*, would be
repairable – as a result of the exclusive mechanism established by Congress specifically to
resolve federal employment grievances.  The Civil Service Reform Act ("CSRA") establishes
"exclusive administrative procedures for resolving grievances" for federal employment
disputes, including matters covered by collective bargaining agreements.  5 U.S.C. § 7121.
Here, Plaintiffs have ready grievance procedures available under their collective bargaining
agreement to address any challenges to the legality of such discipline, were it ever to occur.[7]
*See* Ellis Decl., ¶¶ 4-5, 11-12. And the availability of these procedures dissolves any risk of

---

[6] Plaintiff Doebler has received a non-disciplinary letter of counseling (that will not even go
in his official file) for his failure to follow the orders of his superiors and comply with the
Cross Check III Operational Plan on March 26, 2012. *See* Declaration of Michael Ellis
("Ellis Decl.") (Attachment G), ¶ 8.   Notwithstanding this incident, no Plaintiff, including
Doebler, has faced any action related to the DHS June 15, 2012 Memo.  *See id.*, ¶ 6.
[7] Regardless of whether Plaintiffs have recourse under the Merit Systems Protection Board
for suspensions of fewer than 14 days, *see* Pls.' Opp. to Defs.' Mot. to Dismiss (Dkt. # 30) at
15-16, they cannot deny the availability of collective bargaining grievance procedures.  In
particular, Plaintiff Doebler may challenge the non-disciplinary letter of counseling he
received through these collective bargaining grievance procedures.  *See* Ellis Decl., ¶ 11.

irreparable harm. "[T]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

### 3. Plaintiffs cannot claim to be irreparable injured by the challenged guidance memoranda because those memoranda do not even implicate Plaintiffs' specific employment responsibilities.

As a final matter, the Agent Plaintiffs also cannot demonstrate irreparable injury as a result of alleged restrictions on the issuance of NTAs, *see* Pls.' PI Br. at 22, because these particular Plaintiffs are not themselves even authorized to issue such notices. The named Agent Plaintiffs are either Immigration Enforcement Agents ("IEAs") or Deportation Officers ("DOs"), *see* Pls.' Am. Compl. ¶¶ 9-18, neither of whom are authorized to issue NTAs. *See* 8 C.F.R. § 239.1(a) (listing the officers authorized to issue a NTA, and not including IEAs or DOs as such authorized officials). Although Agent Plaintiffs may sometimes assist in the drafting and service of NTAs, they lack authority to decide on whether an NTA should issue, and therefore plainly cannot claim to be injured by guidance speaking to that specific issue.

### 4. The State of Mississippi Has Failed to Allege Any Irreparable Injury.

The State of Mississippi's claim of irreparable harm is also insufficient. Mississippi's attempt to demonstrate injury relies on nothing more than the set of allegations presented in the Complaint – conclusory and speculative statements that the federal government's focus on higher priority cases will result in some fiscal cost for the State. *See* Pls.' PI Br. at 22-23. As noted in the United States's motion to dismiss, these allegations do not sufficiently allege

injury to establish Article III standing.  *See* Defs.' MTD at 17-22; Defs.' MTD Reply at 6-8. The same (unrebutted) argument forecloses Mississippi's attempt to demonstrate irreparable harm.

Plaintiffs assert that Mississippi's law enforcement budget will be harmed due to costs associated with the incarceration of unlawfully present aliens who, according to Mississippi, would have been removed but-for the challenged DHS memoranda, and whose incarceration costs will reduce the amount of money available to pay state law enforcement officers.  *See* Plfs.' PI Br. at 22.

As noted herein, the challenged DHS memoranda constitute guidance on how to allocate scarce enforcement resources, consistent with Congressional intent, by focusing more on aliens who pose a risk to public safety and national security, rather than those who do not pose such a risk, such as certain aliens who arrived as children and have not engaged in criminal activities.  Although these memoranda speak to *which* aliens should be prioritized for removal efforts, they do not in any way contemplate a diminution of enforcement activity. In fact, as noted in the United States's motion to dismiss, the total number of removals, *and the total number of removals of criminal aliens*, has increased since the initiation of the ICE June 17, 2011 Memo.  *See* ICE Removal Statistics – Charts and Graphs, available at http://www.ice.gov/removal-statistics/ (last visited December 19, 2012).

These unchallenged facts fatally undermine Mississippi's claimed irreparable injury. Mississippi has offered conclusory claims as to fiscal harms, but Mississippi has provided absolutely no basis for concluding that the enforcement strategy embodied in the challenged

directives would increase Mississippi's fiscal burdens.  In fact, common sense suggests the opposite: that the prioritization of the removal of dangerous and criminal aliens will *reduce* Mississippi's fiscal costs (a claim that Mississippi did not rebut in its opposition to the United States' motion to dismiss).

Accordingly, Mississippi has failed to "clearly show[]" irreparable injury, and its request for a preliminary injunction must be denied.

**B.      Plaintiffs Cannot Demonstrate That They Are Likely to Prevail on the Merits.**

**1.  Plaintiffs Lack Standing to Bring Their Claims.**

For the reasons stated in Defendants' motion to dismiss, Plaintiffs' lack standing - which should result both in the denial of this motion and dismissal of this action.

**2.  This Court Lacks Jurisdiction Because Immigration Enforcement is Committed to Agency Discretion.**

This Court should also terminate this litigation for lack of subject-matter jurisdiction. *See Munaf v. Geren*, 553 U.S. 674, 692  (2008) (finding it appropriate to "terminate the litigation" at the preliminary injunction stage if the "Government is entitled to judgment as a matter of law").  Plaintiffs seek relief in this action pursuant to the Administrative Procedure Act ("APA").[8]  But there is no jurisdiction for an APA claim challenging actions committed

_____

[8] Plaintiffs' sole basis for relief in this action is the Declaratory Judgment Act and the APA.  *See* Am. Compl., Prayer for Relief.  It is black letter law that the Declaratory Judgment Act does not provide a Court jurisdiction.  *See Appling Cnty. v. Mun. Elec. Auth. of Ga.,* 621 F.2d 1301, 1303 (5th Cir. 1980).  And, for the reasons explained in this section, this Court lacks jurisdiction under the APA.  (In their Amended Complaint, Plaintiffs rely on 28 U.S.C. § 1331, *see* Pls.' Am. Compl. ¶ 26, but that provision does not provide a waiver of sovereign (***footnote cont'd on next page***)

12

to agency discretion.  *St. Tammany Parish, ex rel. Davis v. FEMA*, 556 F.3d 307, 318 (5th Cir. 2009).

The two memoranda being challenged in this case address ICE's and DHS's guidance regarding the appropriate exercise of prosecutorial discretion in the commencement of civil enforcement proceedings, which is inherently a matter committed to agency discretion.  *See Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (holding that "an agency's decision not to take enforcement action should be presumed immune from judicial review" under the APA).  In *Heckler*, the Supreme Court stressed that an agency "is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities."  *Id.* at 831-32. Agency discretion is unreviewable even if the relevant statute purports to mandate agency action.  Thus, in *Heckler*, for example, the Supreme Court held that the plaintiff could not challenge the government's refusal to exclude certain drugs from the U.S. market, even though the relevant statutory provision stated that violators "***shall*** be imprisoned ... or fined." *Id.* at 835-838 (emphasis added).  Such statutory language did not preclude the discretion inherent in agency enforcement.[9]

---

immunity either.  *See Smith v. Booth*, 823 F.2d 94, 97 (5th Cir. 1987).)
[9] Plaintiffs' reliance on *Adams v. Richardson*, 480 F.2d 1159, 1162 (D.C. Cir. 1973) (en banc) and *Dunlop v. Bachowski*, 421 U.S. 560 (1975) is misplaced.  Both pre-date *Heckler* and involved an alleged abdication of a statutory duty.  But no court since *Heckler* has identified a similar type of abdication of an agency's statutory duties.  *Riverkeeper, Inc. v. Collins*, 359 F.3d 156, 170-71 n.17 (2d Cir. 2004) ("No party has directed us to, nor can we locate, a decision by a court of appeals that has found, in performing the *Chaney* analysis, a federal agency to have abdicated its statutory duties.").  Plaintiffs' claim in this case that the agency has violated a nondiscretionary statutory duty based on the word "shall" was specifically addressed and rejected in *Heckler*.  Nor can they contend that immigration (***footnote cont'd on next page***)

13

Such discretion is undoubtedly available for immigration enforcement decisions such as those challenged here.  *See* 8 U.S.C. § 1103(a); 8 C.F.R. § 2.1.[10]  Although Plaintiffs have maintained that the Immigration and Nationality Act (INA) demands that the federal government initiate removal proceedings in certain instances, the Supreme Court has repeatedly and explicitly rejected this reading of the INA[11] and has instead held that the INA grants broad discretion to the Executive branch, *including* the decision whether to initiate removal proceedings.  *See Arizona v. United States*, 132 S.Ct. at 2499 ("A principal feature of the removal system is the broad discretion exercised by immigration officials.  Federal officials, as an initial matter, *must decide whether it makes sense to pursue removal at all*.") (emphasis added); *AAADC*, 525 U.S. at 483-84 ("At each stage" of the removal process, "the Executive has discretion to abandon the endeavor …."); *see also Texas v. United States*, 106 F.3d 661, 667 (5th Cir. 1997) ("[The State candidly concedes, however, that [INA § 103]

---

enforcement decisions constitute a statutory abdication.  *See Texas v. United States*, 106 F.3d at 667 (holding that "[r]eal or perceived inadequate enforcement of immigration laws does not constitute a reviewable abdication of duty").

[10] 8 C.F.R. § 2.1, the regulation implementing 8 U.S.C. § 1103, states that "[a]ll authorities and functions of the Department of Homeland Security to administer and enforce the immigration laws are vested in the Secretary of Homeland Security," and the Secretary may "in his [or her] discretion" delegate her authority and through "regulation, directive, memorandum or other means deemed appropriate," announce principles "in the exercise of the Secretary's discretion."

[11] In fact, this very argument that 8 U.S.C. § 1225 creates a nondiscretionary duty on the part of the Executive was presented by Plaintiffs' lead counsel in an amicus brief to the Supreme Court, *see* http://www.americanbar.org/content/dam/aba/publications/supreme_court_preview/briefs/11-182_petitioneramcusecurestatesinitiative.authcheckdam.pdf at 9 (last visited December 19, 2012); however, the Court held that the federal government *does* have discretion in deciding whether to pursue removal.  *Arizona v. United States*, 132 S.Ct. at 2499.

14

places no substantive limits on the Attorney General and commits enforcement of the INA to her discretion.").

In short, the Supreme Court's approval of deferred action – the very administrative tool and form of prosecutorial discretion challenged in this litigation – indicates the lack of merit in Plaintiffs' claim that the initiation of removal proceedings is obligatory for every unlawfully present alien. *See AAADC*, 525 U.S. at 485 (challenged INA provision "seems clearly desired to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations").

Ignoring relevant Supreme Court authority, Plaintiffs mistakenly assert that the 1996 amendments to the INA "restrict[ed] the discretion available to the executive branch," *see* Pls. PI Br. at 4, and therefore demand that this Court enjoin the Secretary's exercise of this discretion. *Id.* at 25. In fact, the Supreme Court in *AAADC* counseled otherwise. The Court observed that at the time IIRIRA was passed, the Executive had engaged in a regular practice of exercising prosecutorial discretion, including declining to institute proceedings or even terminating proceedings. *Id.* at 483-84. The Court emphasized that much of IIRIRA was "aimed at protecting the Executive's discretion from the courts – indeed, that can fairly be said to be the theme of the legislation." *Id.* at 486. Thus, 8 U.S.C. § 1252(g) (the particular provision at issue in that case) "was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 485 n.9. In the course of this discussion, the Supreme Court specifically listed deferred action as an example of the type of discretionary tool available to the Executive Branch.

15

This same conclusion was echoed just this last term in *Arizona*, which, as noted above, explicitly confirmed the government's broad discretion with respect to whether to initiate removal proceedings. Plaintiffs' claims regarding the unavailability of the very discretion repeatedly recognized by the Supreme Court should therefore be rejected.[12]

### 3. This Court Lacks Jurisdiction Because Plaintiffs' Employment Grievance May Only Proceed Under the CSRA.

Additionally, this Court lacks jurisdiction over the Agent Plaintiffs' claims because they essentially have alleged an employment dispute. *See* 5 U.S.C. § 7103(a)(9)(C)(ii) (grievance includes any "any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment"); *see also* Ellis Decl., ¶ 11 (describing Article 47 of collective bargaining agreement which explicitly includes these types of disputes). This Circuit has made clear that federal employment grievances may proceed only under the CSRA; this Court otherwise lacks jurisdiction (under the APA or otherwise) to resolve such disputes. *See, e.g. ,Rodgers v. Scott*, 95 F.3d 47 at *1 (5th Cir. 1996) (unpublished) (Plaintiffs "may not circumvent the detailed scheme of the CSRA by invoking the more general APA") (citing *Broadway v. Block*, 694 F.2d 979 (5th Cir. 1982)).[13]

---

[12] After IIRIRA, the federal government has consistently recognized the use of deferred action, including prior to the issuance of an NTA. *See* Meissner 2000 Memo at 6; Howard 2005 Memo at 2.

[13]*See also Plasi v. Mineta*, 212 Fed. App'x 287, 292 (5th Cir. 2006) (CSRA's "'comprehensive and exclusive procedures for settling work-related controversies between federal civil-service employees and the federal government' necessarily preempt [Federal Tort Claim Act] claims") (quoting *Rollins v. Marsh*, 937 F.2d 134, 139 (5th Cir. 1991)); (***footnote cont'd on next page***)

**4. Even if this Court had Jurisdiction, Plaintiffs Could Not Prevail on the Merits of Any of their Claims.**

**a.     Section 1225(b) Does Not Mandate the Issuance of NTAs to all Unlawfully Present Aliens.**

Although the standing and jurisdictional flaws are dispositive with respect to Plaintiffs' likelihood of success, their argument also proceeds from a statutory interpretation that is wrong as a matter of law.  Contrary to Plaintiffs' assertion, *see* Pls.' PI Br. at 6, Section 1225 does not strip DHS of all discretion on the initiation of removal proceedings for all unlawfully present aliens.

To begin with, Plaintiffs misunderstand the statute's scope.  On its face, section 1225(b)(2)(A)'s statement that the "alien shall be detained" applies only to applicants for admission who are "seeking admission" to the United States, not to aliens who are already present (*i.e.*, the type of aliens who would be affected by the challenged Departmental memoranda):

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an ***alien seeking admission*** is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).[14]  While, as Plaintiffs point out, aliens who are present in the United States and have not been admitted are deemed "applicants for

---

*Montgomery v. U.S. Army Corps of Engineers*, 128 F. Supp. 2d 433, 436 (S.D. Tex. 2001) ("Under the CSRA, even having exhausted administrative remedies, Plaintiff is not entitled to judicial review") (citing *Morales v. Dep't of the Army*, 947 F.2d 766, 768 (5th Cir. 1991)).
[14]Section 1225 is typically relied upon to inspect aliens at a designated port of entry or near the border. ICE relies less upon this provision in the interior of the United States and instead (***footnote cont'd on next page***)

17

admission" pursuant to 8 U.S.C. § 1225(a)(1), they are not necessarily "seeking admission" for purposes of section 1225(b)(2). In fact, although section 1225(b)(2)(A) addresses the general category of "applicants for admission," the immigration officer's determination and the "shall be detained" language apply only to "alien[s] seeking admission." The phrase "alien seeking admission" has been interpreted to mean only those aliens coming or attempting to come into the United States at a port of entry.[15] *Compare* 8 U.S.C. § 1225(b)(1)(A)(i) (applying expedited removal to aliens "arriving in the United States") *with* 8 U.S.C. § 1225(b)(1)(A)(iii) (applying expedited removal to certain other aliens who have not been admitted or paroled into the United States).

The Executive Branch has consistently construed the requirements of 8 U.S.C. § 1225 in this manner and this interpretation is entitled to deference. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,357 (Mar. 6, 1997) (codified at 8 C.F.R. § 235.3(c)) ("*any arriving alien* who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to [section 1229] shall be detained in

_____

focuses on the identification, apprehension, and detention of aliens. Section 1226, the source of this latter authority, permits ICE agents to determine whether to issue a warrant, when to issue it, and whether to cancel it. *See* 8 C.F.R. § 236.1(b). Judicial review of this exercise of prosecutorial discretion by ICE agents is explicitly limited by statute. *See* 8 U.S.C. § 1226(e) ("[D]iscretionary judgments regarding the application of [section 1226] shall not be subject to review.").

[15] There is a general presumption against reading an additional phrase in a statute as extraneous. *See Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 877 (1991) ("Our cases consistently have expressed a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment.") (internal quotation omitted).

accordance with [section 1225(b)]" (emphasis added)).[16]  DHS regulations make this

distinction altogether clear – an "arriving alien" is defined by regulation as "an applicant for

admission coming or attempting to come into the United States at a port-of-entry," but does

not include aliens who entered without inspection.8 C.F.R. §1.2.

Finally, even if Plaintiffs' strained interpretation of section 1225(b)(2)(A) governed

the aliens covered by the challenged departmental memoranda, it would not eliminate the

precise type of prosecutorial discretion challenged herein.[17] *See Matter of E-R-M & L-R-M*,

25 I. & N. Dec. 520, 522 (BIA 2011) (holding that, "in the context of a purported restraint on

the DHS's exercise of its prosecutorial discretion," the word "shall" in 8 U.S.C. §

1225(b)(1)(A)(i) does not restrain the exercise of this discretion) (citing *United States v.

Batchelder*, 442 U.S. 114, 118 (1979)).[18]  Decisions of the Board of Immigration Appeals

---

[16] An agency's reasonable interpretation of a statute is entitled to deference. *See generally Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  Plaintiffs' assertion that the Secretary's interpretation is not entitled to *Chevron* deference, *see* Pls.' PI Br. at 21-22, is based on the misunderstanding that the June 15, 2012 Memorandum announced a new interpretation of 8 U.S.C. § 1225(b), rather than simply reiterated the interpretation put forth in the above cited regulation, 8 C.F.R. § 235.3(c), as well as a related BIA decision. *See infra* at 19-20.

[17] The Supreme Court has rejected the argument that the use of the term "shall" necessarily divests an arresting officer of discretion and mandates the arrest of every violator. *See, e.g., Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760–62 (2005) (police have discretion in enforcing restraining orders that say police "shall" use every reasonable means to enforce); *Chicago v. Morales*, 527 U.S. 41, 62 n.32 (1999) (police have discretion in enforcing city ordinances, even when the ordinances use the term "shall").

[18] Because 8 U.S.C. § 1225(b)(2)(A) and 8 U.S.C. § 1225(b)(1)(A)(i) were simultaneously enacted in 1996 as part of IIRIRA, § 302, Pub. L. No. 104–208, 110 Stat. 3009 (1996), they should be interpreted consistently. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S.Ct. 1997, 2004-5 (2012) ("[I]t is a normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning.") (internal quotations (***footnote cont'd on next page***)

19

(BIA) are accorded deference by the judiciary unless "arbitrary, capricious or manifestly contrary to the statute." *See Orellana-Monson v. Holder*, 685 F.3d 511, 521 (5th Cir. 2012) (citing *Chevron,* 467 U.S. at 844).

Because Plaintiffs' interpretation of the statute that forms the basis of their claims is not reasonable in light of the statute's plain language, implementing regulations, and controlling precedent, they are not likely to prevail on the merits of their claims.

           **b.**       **Plaintiffs' Attempt to Recast the Alleged Statutory Violation as a Separation of Powers Violation Should be Rejected.**

Plaintiffs' "legislative powers" and "take care" claims, *see* Pls.' PI Br. at 9-13; *id*. at 13-15, are wholly dependent on whether Defendants acted within delegated statutory authority, and, as just explained, they have. *See Immigration & Naturalization Serv. v. Chadha*, 462 U.S. 919, 954 n.16 (1983) (holding that delegated "Executive action is always subject to check by the terms of the legislation that authorized it; and if that authority is exceeded it is open to judicial review"); *Heckler*, 470 U.S. at 832 ("[W]e recognize that an agency's refusal to institute proceedings shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict-a decision which has long been regarded as the special province of the Executive Branch, inasmuch as it is the Executive who is charged by the Constitution to 'take Care that the Laws be faithfully executed.'") (quoting U.S. Const., Art. II, § 3).[19]

---

omitted).

[19] It is irrelevant to this Court's analysis whether the Secretary's memorandum addresses (***footnote cont'd on next page***)

Because Defendants have acted pursuant to statutory authority, as described above, Plaintiffs' constitutional allegations are accordingly without merit.

### c. The Secretary's Guidance Regarding the Exercise of Prosecutorial Discretion is Not Subject to Notice and Comment.

Plaintiffs' APA argument fails for several reasons.  As explained above, this Court lacks jurisdiction to review Plaintiffs' APA claims. *St. Tammany Parish*, 556 F.3d at 318 (APA waiver of sovereign immunity does not extend to "'action [that] is committed to agency discretion by law.'") (quoting 5 U.S.C. § 701(a)).

Plaintiffs' APA challenge further fails because the challenged memoranda reflect general statement of policy by the agency, which are not subject to notice-and-comment. *See Lincoln v. Vigil*, 508 U.S. 182, 197 (1993) (holding that the APA exempts "general statements of policy," from "notice-and-comment," which the Supreme Court has described as "'statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power.'") (citations omitted).[20]

Finally, Plaintiffs' assertion that the Secretary's memorandum must be subject to notice-and-comment is also based on the false premise that the DHS June 15, 2012 Memo

---

similar policy concerns to proposed legislation, *see* Pls.' PI Br.. at 9-10.  Moreover, the DHS June 15, 2012 Memo explicitly confers no substantive right, immigration status or pathway to citizenship, *see* DHS June 15, 2012 Memo at 3, and thus recognizes that only "Congress, acting through its legislative authority, can confer these rights."  *Id.*

[20] Plaintiffs' further argument that the Secretary's memorandum should be subject to notice-and-comment because it is a change in position is also without merit.  *See* Pls.' PI Br. at 20-21  As explained above, the Secretary, and previously the Attorney General, have consistently recognized that prosecutorial discretion can be exercised at the commencement of a removal proceeding, before an NTA is issued.

confers a benefit, namely, employment authorization.[21]  The Secretary's memorandum does

not confer any such benefits; it simply provides guidance about situations in which

individuals should receive consideration of deferred action.  Employment authorization is

provided for by a pre-existing regulation that recognizes that individuals for whom action has

been deferred may be eligible for employment authorization.  *Compare* 8 C.F.R. §

274a.12(c)(14) (contemplating employment authorization for an "alien who has been granted

deferred action" and can demonstrate "economic necessity") *with* DHS June 15, 2012, Memo

at 3 ("For individuals who are granted deferred action by either ICE or USCIS, *USCIS shall

accept applications to determine whether these individuals qualify* for work authorization

during this period of deferred action.") (emphasis added).  The Secretary's memorandum in

no way affected the law governing who is eligible for employment authorization.

> **d.      The Secretary's Memorandum is Consistent with a Pre-
> Existing Regulation Allowing USCIS to Consider
> Employment Authorization for those whose Action has
> been Deferred.**

As explained above, Plaintiffs' contention that the agency's exercise of prosecutorial

discretion is being used to unlawfully "grant the benefit of employment authorization," *see*

Pls.' PI Br. at 7-8, is incorrect.  The Secretary's memorandum does not confer any such

benefit, but simply contains a line recognizing a longstanding federal regulation that an alien

---

[21] *See* Pls.' Am. Compl., Sixth Cause of Action ("The Directive Violates the Administrative
Procedure Act Through Conferral of a Benefit Without Regulatory Implementation"); Pls.'
PI Br. at 15-16 ("the Directive enumerates the qualifications of  a large class of individuals
who made eligible for non-removal and specific benefit of employment authorization").

22

for whom action has been deferred may submit an employment authorization application.

*See* 8 C.F.R. § 274a.12(c)(14).  Accordingly, Plaintiffs are not likely to prevail on the merits

of this claim regarding employment authorization.

      **C.**    **Enjoining the Secretary's Directive Would Harm Both Defendants and the Public Interest.**

Finally, Plaintiffs must also demonstrate that "the[ir] threatened injury outweighs any

harm that will result" to Defendants if the injunction is granted and that "the granting of the

preliminary injunction will not disserve the public interest."  *Ridgely v. FEMA*, 512 F.3d 727,

734 (5th Cir. 2008).  Plaintiffs' motion fails on both accounts.  The minimal, hypothetical

financial consequences alleged in the Complaint (to one state and 10 federal employees) are

vastly outweighed by harm to the public interest that would result from the contemplated

injunction, which would bar the Secretary from promoting public safety and national security

as furthered by the challenged memoranda.

It is in the public interest to focus the government's limited resources to the

enforcement of its highest priority cases – such as aliens who pose national security risks,

serious criminals, and repeat offenders, rather than to aliens who arrived in the United States

as children and have no criminal record.  Indeed, DHS's practice conforms to Congress's

encouragement to "prioritize the identification and removal of aliens convicted of a crime by

the severity of that crime."  DHS Appropriations Act, 2012, Pub. L. No. 112-74, Div. D, Tit.

ii, 125 Stat. 950 (2011); *see also* H.R. Rep. 111-157, at 6 (2009) ("[R]ather than … targeting

the easiest and least threatening among the undocumented population, DHS must ensure that

the government's huge investments in immigration enforcement are producing the maximum

23

return in actually making our country safer."). The Secretary is best positioned to exercise this discretionary judgment. *See Arizona*, 132 S. Ct. at 2499. Plaintiffs themselves acknowledge the need for priorities, *see* Pls.' PI Brief at 24, but essentially claim that the Court should be swayed by the policy preferences of displeased employees rather than the agency's expertise in focusing its resources on a national basis towards the removal of aliens who meet the agency's most important enforcement priorities.

Moreover, the public interest is advanced by the Secretary's ability to consider other equities associated with discretionary relief provided to individuals potentially subject to removal. As the *Arizona* Court acknowledged, "[d]iscretion in the enforcement of immigration law embraces immediate human concerns." 132 S. Ct. at 2499. Such discretion may properly recognize the difference between "unauthorized workers trying to support their families" and "alien smugglers" or those "who commit a serious crime." *Id.* The memoranda at issue here reflect such human concerns, such as whether an alien has children born in the United States, long ties to the community, or a record of distinguished military service. *Id.; see, e.g.*, Howard Memo at 3 (instructing ICE attorneys that "[i]f an alien is an immediate relative of a military service member, a favorable exercise of discretion, including not issuing an NTA, should be a prime consideration."). The injunction sought by Plaintiffs would work immense harm to the public interest by mandating removals even where prosecutorial discretion is not only appropriate, but beneficial.

Plaintiffs are unhappy with policy decisions that are firmly within the Secretary's discretion and thus ask this Court to replace the agency's expertise in enforcing and administering the nation's

immigration laws with Plaintiffs' own enforcement priorities.  This is precisely the sort of "broad programmatic attack" that the Supreme Court has deemed inappropriate, especially where "the manner [of agency] action is left to the agency's discretion."  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64-65 (2004).  Accordingly, this Court should decline Plaintiffs' invitation to interfere with the agency's lawful exercise of prosecutorial discretion and deny Plaintiffs' Motion for a Preliminary Injunction.

## CONCLUSION[22]

For the reasons stated herein, Plaintiffs' Application for Preliminary Injunctive Relief must be denied.

---

[22] Plaintiffs' proposed preliminary relief also runs contrary to the "general principle [that] 'injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'"  *See Lion Health Serv., Inc. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).  Plaintiffs fail to limit the proposed injunction to their claimed injuries resulting from what they perceive to be a violation of 8 U.S.C. § 1225.  They instead propose an order that would suspend the enforcement of the challenged memoranda *nationwide*, a suggestion that is completely out-of-proportion to the alleged, speculative injuries to ten ICE employees and one state, and that allegedly arise during only one stage of immigration enforcement.  As even Plaintiffs admit, the agency's prosecutorial discretion can be exercised "*after* such [removal] proceedings have been initiated."  *See* Pls.' PI Brief at 5 (emphasis in original).  Plaintiffs therefore acknowledge that their requested injunction– which would preclude the exercise of discretion at all stages of immigration enforcement – sweeps too broadly.

Dated:  December 19, 2012

Respectfully Submitted,

STUART F. DELERY
Principal Deputy Assistant Attorney General

SARAH R. SALDANA
United States Attorney

IAN HEATH GERSHENGORN
Deputy Assistant Attorney General

*/s/ Adam D. Kirschner*
ADAM D. KIRSCHNER (IL Bar No. 6286601)
BRADLEY H. COHEN (DC Bar No. 495145)
Trial Attorneys, Federal Programs Branch
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W.
Washington, DC 20530
(202) 353-9265
Adam.Kirschner@usdoj.gov
Bradley.Cohen@usdoj.gov

*Counsel for Defendants*